STATE v. ITASCA LUMBER COMPANY.[1]

March 15, 1907.

Nos. 15,088—(205).

**Taxation—Public Land.**

During the time which elapses between the filing of an application for the location of scrip upon certain lands belonging to the United States, and the approval of the application by the commissioner of the general land office, the land described in the application is not subject to taxation by the state.

**Same.**

Where the legal title to lands remains in the United States, the land is subject to taxation by the state only after the full consideration has been paid and a perfect equitable title has vested in the purchaser.

[1] Reported in 111 N. W. 276.

**Doctrine of Relation.**

> The doctrine of relation applies only when necessary to protect the rights of persons who have acquired an equitable right or claim to the title.

In proceedings in the district court for Itasca county for the enforcement of real estate taxes delinquent on the first Monday in January, 1904, defendant interposed an answer in which it alleged that the land in question on May 1, 1902, and up to and including May 5, 1903, was the property of the United States, and in consequence was exempt from taxation. The case was .tried before McClenahan, J., who found in favor of defendant. From a judgment entered pursuant to the findings, plaintiff appealed. Affirmed.

*Edward T. Young,* Attorney General, *George H. Spear,* and *Alfred L. Thwing,* for the State.

*A. Y. Merrill* and *R. J. Powell,* for respondent.

ELLIOTT, J.

On the 30th of July, 1900, E. A. Coffin presented certain scrip to the United States land office, and his application was then made and filed for the location of the scrip upon certain described and designated lands. Thereafter all the rights of Coffin in the scrip and the location thereof were conveyed to H. C. Akely, for and on behalf of the Itasca Lumber Company. The application to locate the scrip passed through the usual routine of the general land department of the United States government, and was, on the 5th day of May, 1903, duly approved by the commissioner of the general land office and permitted to be filed and the land entered thereunder. Thereupon the receiver's receipt was issued. No application to locate the land or obtain title thereto from the United States had been made prior to July 30, 1900. The title to the land was never obtained by the Itasca Lumber Company, or by any one from the United States, except through the location of this scrip. The county of Itasca having levied a tax on the land for the year 1902, the Itasca Lumber Company contested the same, and upon the admitted facts the trial court held that the land belonged to the United States and was not then subject to taxation by the state. The county appealed from a judgment in favor of the lumber company.

The stipulation of facts does not disclose the nature of this scrip, nor the effect of the filing as determined by the practice of the land de-

partment. It does not appear that the government fees were paid by the applicant, nor that the applicant was ever in possession of the land. It is conceded, of course, that if the land belonged to the United States until May 5, 1903, it was not subject to taxation by the state or by any of its agencies in the year 1902.

. Usually the possession of the legal title by the United States government determines both the fact and the right of ownership. With respect to the public domain there is one exception to this general rule, which is as well settled as the rule itself. When Congress has prescribed the conditions upon which portions of that domain may be alienated, and provided that upon the performance of the conditions the United States shall issue a patent to the purchaser, and all the conditions are complied with, it only remains for the United States to issue the patent, and in the meantime it holds the legal title in trust for the purchaser. When the government has no longer any right or interest in the property which would justify it in withholding the patent, and the purchaser is in possession, the latter will be treated as the beneficial owner. This exception rests upon the principle that he who has the right to property and is not excluded from its enjoyment shall not be permitted to use the legal title of the government to escape his just share of taxation. But, before the land can be taxed by the state as the property of the beneficial owner, a perfect equitable title must be vested, and the consideration fully paid to the United States. As long as the government retains the legal title as security for the payment of any part of the purchase money, the land is not subject to taxation. United States v. City of Milwaukee (C. C.) 100 Fed. 829. This perfect equity is acquired when the certificate of entry or receiver's final receipt is issued. Railway Co. v. Prescott, 16 Wall. 603, 21 L. Ed. 373; Railway Co. v. McShane, 22 Wall. 446, 22 L. Ed. 747; Northern Pac. R. Co. v. Traill County, 115 U. S. 600, 6 Sup. Ct. 201, 29 L. Ed. 477; Wisconsin Cent. R. Co. v. Price County, 133 U. S. 496, 10 Sup. Ct. 341, 33 L. Ed. 687; Hussman v. Durham, 165 U. S. 144, 17 Sup. Ct. 253, 41 L. Ed. 664. The presentation of the scrip, with an application to locate it upon certain land, gave the applicant the preference over other subsequent claimants of the land; but, until the application was approved and acted upon by the commissioner, the applicant acquired no interest, legal or equitable, in the

land as against the United States. During the intervening time it might have been withdrawn from entry or disposed of by the government in some other manner. Payment for the land was not made until the scrip was approved and the receipt therefor issued. Cass County v. Morrison, 28 Minn. 257, 9 N. W. 761, and Wheeler v. Merriman, 30 Minn. 373, 15 N. W. 665, are therefore not controlling.

It is suggested that the title or interest of the purchaser should by the application of the doctrine of relation be carried back to the date of the presentation of the scrip. But this doctrine is never applied, except when necessary to give effect to an act or instrument the operation of which would otherwise be defeated. Butler's Case, 3 Co. 25; Menvil's Case, 13 Co. 19; Hammond v. Warfield, 2 Har. & J. 151; note to Jackson v. Ramsay, 15 Am. Dec. 246. It is a fiction of law which the courts apply in furtherance of justice and upon broad equitable principles. In Gilbert v. McDonald, 94 Minn. 289, 102 N. W. 712, 110 Am. St. 368, it was applied for the protection of a purchaser of public land against a trespasser, and in Nicholson v. Congdon, 95 Minn. 188, 103 N. W. 1034, for the purpose of giving effect to a power of attorney. The doctrine has no application to a case of this character. The holder of this scrip did not acquire a complete equitable interest in the land as against the United States until the scrip was approved and its location authorized by the commissioner.

The order of the trial court was therefore correct, and the judgment entered thereon is affirmed.