BOWLS v. OKLAHOMA CITY *et al.*

No. 81. Opinion Filed July 13, 1909.

(104 Pac. 902.)

**TAXATION—Real Estate—Owner—Purchaser in Possession.** A vendee of realty, in possession under an executory contract of sale at the date of the assessment, is the real owner for the purpose of taxation, and that, too, whether prior to said sale the same was subject to taxation in the hands of his vendor or not.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County; George W. Clark, Judge.*

Action by R. L. Bowls against the city of Oklahoma City and others. Judgment for defendants, and plaintiff brings error. Affirmed.

*W. A. Smith* and *M. Fulton,* for plaintiff in error.

*James S. Twyford,* City Atty., *Edward E. Reardon,* Co. Atty., and *Crane & Ready,* for defendants in error.

TURNER, J. From an order of the district court of Oklahoma county entered in this cause on January 27, 1908, dissolving a temporary injunction theretofore issued herein restraining the city of Oklahoma City and J. S. Alexander, county treasurer, and Ed. S. Blackburn, county clerk, and their successors in office, defendants in error, defendants below, from levying or attempting to levy any tax either general or special against lots 19 and 20, in block 17, Military addition to Oklahoma City, Okla. Ter., and said clerk and treasurer from spreading the same upon the records, R. L. Bowls, plaintiff in error, plaintiff below, brings error to this court, and avers that the court errs in dissolving said temporary injunction, because, he says, that, being a "conditional owner" of said property, said taxes were not properly assessable to him.

The facts disclose: That by an act of Congress approved August 8, 1894 (Act Aug. 8, 1894, c. 237, 28 Stat. 264), the United States granted to the city of Oklahoma City in trust for the use and benefit of its free schools a certain tract of land of which said lots are a part comprising the southwest quarter of section 34, township 12 north of range 3 west, in the territory of Oklahoma, which said act provided, after making certain reservations, "that said city shall cause the remainder of said reservation hereby granted to be divided into lots and blocks corresponding as near as practicable with the plat of said city," and provided, further, in substance, that "when sales are made and the purchase money all paid said city shall execute proper deeds to the purchasers." That on December 24, 1894, plaintiff and the defendant Oklahoma City entered into a contract of sale of said lots, whereby said city agreed to sell and convey to said Bowls, his heirs and assigns, said lots as shown by the plat then on file in the office of the register of deeds of said city, in consideration of $25 cash in hand paid, and the further payment of $32 on or before one year after said date, and the further sum of $75 on or before December 24, 1912, with interest on said deferred payments, provided, among other things, that said Bowls pay all

taxes special or general which might be assessed or levied against said lots when the same became due and payable. That, when said sums were fully paid as therein provided, said city agreed that it would cause to be executed, acknowledged, and delivered to said Bowls, his legal representative or assigns, a good and sufficient deed in fee simple to said lots. That thereupon said. Bowls took possession of said lots which he has since retained, and is not in default in any of said payments. That said lots were duly assessed for general taxes for the year 1904 in the sum of $16.72, which at the time· of the filing of this suit had not been paid, and were on the tax list of the county which were in the custody of said J. S. Alexander, treasurer, who was threatening to sell said lots for said tax, and which he would have done but for the restraining order issued in this cause. That said lots were duly assessed in the year 1905 for general taxes in the sum of $16.34, which said taxes were also on the tax·list and had been by the assessor certified to said Ed. S. Blackburn, county clerk of Oklahoma county, which at the time of this restraining order were being placed ·on the tax rolls ·by said Blackburn, assessor, preparatory to being certified to said county treasurer for collection. That a special tax of $81.68 had also been levied against said lots pursuant to an ordinance of said city for sewer improvements, which, at the time this suit was brought, was of record in the clerk's office of said city as a charge. against said lots, and was being certified by said clerk to the county clerk of that county to be placed on the assessment rolls and tax rolls for collection, and that said sewer· was constructed and said assessment a proper apportion against said lots.

As it is admitted that, if said property is properly chargeable with the general, it is with the special, tax, we will confine ourselves to the inquiry whether the holder of the equitable title to land is regarded in law as the "owner thereof" under Wilson's Rev. & Ann. St. Okla. 1903, § 5931, and, if so, whether an assessment of a general tax against the property in his name as such owner is valid. We think it is, and that, too, independ-

ent of any statute or the express stipulation contained in the executory contract. of sale. 27 Am. & Eng. Enc. Law, 678, says:

"Assessments in the name of a person as owner, who holds the equitable title to property and is in possession have been generally upheld as valid"; citing authorities.

In the section of Wilson's Rev. & Ann. St. 1903, *supra*, it is provided:

"All taxable property, real and personal, shall be listed and assessed each year in the name of the owner thereof on the first of March of each year. * * *"

In *Anderson v. Harwood*, 47 Mo. App. 660, the governing statute read:

"Every person owning or holding property on the first day of June * * * shall be liable for taxes thereon for the ensuing year."

The executory contract contained no obligation on the part of the vendor to pay the taxes. The court in the syllabus said:

"A vendee of realty, in possession under a contract of sale at the date of the assessment, is the real owner for the purpose of taxation, whether he hold the legal title or not."

See, also, *Farber v. Purdy*, 69 Mo. 601.

In *Miller v. Corey*, 15 Iowa, 166, the facts were that:

"In 1854 defendant's intestate sold to plaintiff a farm, for which there was to be paid $2,250. A bond was given, which recites the payment of $50 at the time of the contract, and that notes were given for different sums, the last one maturing March 1, 1861. Plaintiff was to have full possession on the 1st of May, 1855, and the notes drew interest from date at 6 per cent. Upon payment of these notes the vendor bound himself to make and deliver to plaintiff 'a good and sufficient deed, clear of all incumbrances.' For the years 1858-61 the taxes were unpaid on the land thus sold, amounting to over $150. Plaintiff paid all the notes and demanded a deed, and thereupon a controversy arose as to whose duty it was to pay said taxes. The court below held that it was plaintiff's duty to pay such as accrued after he took possession, to wit, May 1, 1855; and from this order plaintiff appeals."

The court in passing said:

"By the terms of the contract the vendee had a right to the

possession of this land before these taxes were assessed, and this right, according to the finding of the court below, he exercised and enjoyed from and after the time thus fixed. He then had the sole control and was in the full receipt of all the accruing rents and profits of the property. The vendor was deriving no profit from the land and, indeed, as we have seen, aside from his lien, had no other interest in it than as trustee holding the legal title for the beneficiary or vendee. It is but equitable certainly that when the vendee enters into the possession of real property, and takes and enjoys the rents and profits, if the contract is silent as to the taxes, he should pay the same, and·not exact the repayment thereof before accepting the deed provided for in the bond. As a rule, the party deriving the sole profit from the use of the land, in the absence of some stipulation, should pay the accruing taxes."

*Wells v. Mayor and Alderman*, 87 Ga. 397, 13 S. E. 442, was a suit to restrain the collection of municipal taxes against certain lots in the city of Savannah, which said lots had been purchased by plaintiff from said city the terms of the purchase being the payment of an annual ground rent forever, or, at the election of the purchaser, his heirs, etc., the payment in full of the stipulated purchase money at any time. The court held that the action would not lie, and, in passing, said:

"Such were the contracts involved in the present case, and under them the purchasers have the actual possession and use of the premises, with the right to hold forever, on condition of paying up the purchase money whenever they please, and, until that time, an annual ground rent due by quarterly installments, the amount of which is fixed by contract, and is the equivalent of interest at a moderate rate per annum on the unpaid purchase money. In all essential respects, so far as liability for taxes is concerned, these purchasers are in the position of ordinary purchasers in possession under a bond for title, and these last are chargeable with accruing taxes on land so held. *Bank v. Danforth*, 80 Ga. 55, 7 S. E. 546."

See, also, *Boggess v. Scott et al.*, 48 W. Va. 316, 37 S. E. 661.

In *Green et al. v. Watson et al.*, 34 Pa. 332, the facts were that John Nicholson, Comptroller General, was much indebted

to the commonwealth evidenced by judgments which were liens upon his lands. After the same had attached, the commonwealth appointed a commission charged with the duties of averaging on each tract the demand of the state on account of the lien according to the estimated value thereof, and reported to the Governor. After this was done, said commissioners were authorized to sell said land under process from the Governor for cash or on time, not later than four years, payable in installments, the purchase money to be secured by bonds with security to be approved by them, the same to bear interest, and the land meantime to be subject to the payment of the unpaid purchase money. The purchaser was to receive from the commission a certificate and the bonds were to be deposited with the State Treasurer, the sale was to be certified to the Secretary of the Commonwealth, who was required, on application of the purchaser, together with the production of the certificate of the commission and the receipt of the State Treasurer that the purchase money was all paid, to execute a deed to the purchaser of all the interest of Nicholson in the land at the commencement of the lien of the commonwealth. The suit was in ejectment, plaintiff basing his title to the land in controversy on a treasurer's sale of it to one Andrew Wiggins and a deed dated September 16, 1823, for the taxes of 1820 and 1821. Defendants to defeat this title relied upon a sale by the said commission to one Baldwin on July 8, 1807, a transfer by Baldwin and wife to Bumpford in September, 1835, and a deed from the commonwealth to the latter dated October 2, 1835. This deed recited the certificate of sale by the commission and the receipt of the purchase money in full and the conveyance to Bumpford in 1835. The court held the tax title to be valid, and in passing said:

"Was there a sale of the land to Mr. Baldwin? If so, was it not liable to be sold for taxes? We do not hesitate, for one moment, to answer this question in the affirmative. * * * Assuredly then to Mr. Baldwin the equitable estate passed, and this was the introduction of a new owner, whose property was

liable to contribute its proportion to the public burden under the tax laws. It is true the land in the hands of the purchaser was held subject to the purchase money, contracted to be paid to the commonwealth. But this was only a lien, and it was a matter between buyer and seller. It is more than likely that the purchaser of the tax title, if any portion of the purchase money remained unpaid, would have taken the title of Mr. Baldwin subject to its discharge and payment. It often occurs that land is sold for taxes, when there is purchase money due the state, but this does not defeat the sale. The title of the equitable owner passes notwithstanding."

We are therefore of the opinion that plaintiff in error was the owner of the land within the contemplation of the law and that the assessment is proper.

But it is insisted by plaintiff in error that he is likened unto one who has not earned a patent to land from the United States, and that, the title to the property in controversy being in the United States or in the city of Oklahoma City and not taxable in the hands of his vendor, the same is not taxable in his hands until the legal title passes to him. Not so. We are of the opinion that it is immaterial whether the property in question was or was not before said sale to him taxable in the hands of plaintiff's vendor for the reason that whether thus taxable or not it would become taxable as the property of plaintiff on the vesting in him of the equitable title thereto. Plaintiff, then, is rather likened to one who holds a final certificate for lands purchased from the United States of which said lands it has been held that the purchaser holds the equitable title, and while, of course, not taxable in the hands of the United States, are taxable in his hands.

In *Puget Sound Agricultural Company v. Pierce County,* 1 Wash. T. 159, the county commissioners' court of that county ordered certain lands within the county claimed by plaintiffs in error—amounting to some 160,000 acres—to be assessed for taxes. From this order plaintiffs in error appealed to the district court of that county, which court affirmed the order of the commissioners' court, and rendered a *pro forma* judgment,

which was appealed to the Supreme Court upon an alleged statement of facts. It thus appears that plaintiffs in error were the owners of said tract of land which they had caused to be surveyed and platted, and plat thereof filed in office of the Surveyor General of the territory of Washington; that the government of the United States had in a manner recognized that survey, but did not designate the claim of plaintiffs in error to the land by metes and bounds except by recognizing those set by the company in its instructions to the Surveyor General; that the company was originally organized in Great Britain, and has since remained a foreign association. A "state of doubt and uncertainty" prevailing between the United States and Great Britain respecting their rights of sovereignty over "the territory on the northwest coast of America lying westward of the Rocky or Stony Mountains," a treaty was concluded between those powers June 15, 1846, adjusting their respective rights over said territory. At that time plaintiff in error was engaged in agricultural pursuits in said territory on a large scale, and the existence of the company and their rights were recognized by the treaty, which provided among other things:

"The farms, lands, and other property of every description belonging to the Puget Sound Agricultural Company, on the north side of the Columbia river, shall be confirmed to the said company."

On substantially this state of facts the court, in substance, held that said company held the equitable title to said lands and that the same were taxable. The court said:

"It may be conceded, however, that the fee to the lands here is not in the company, and will not vest until legislative action is had in the premises, and yet it is believed that the United States holds the fee in trust for the company, and that the company possess such an equitable title to the lands as subjects them to taxation. It has been repeatedly ruled by the courts that lands held by patent certificate might before the patent issues be subject to taxation. Such is the law in perhaps all the Western States, where a large amount of lands have been sold under such title."

And after quoting approvingly from *Carrol v. Perry et al.,* 4 McLean, 25 Fed. Cas. No. 2456, the court said:

"In *Carroll v. Safford,* 3 How. 441, 11 L. Ed. 671, the law was held by the Supreme Court of the United States to be: 'When the land was purchased and paid for, it was no longer the property of the United States, but of the purchaser. He held it for a final certificate, which could no more be canceled by the United States than a patent. It is said the fee is not in the purchaser, but in the United States, until the patent shall be issued. This is so technically at law, but not in equity. The land in the hands of the purchaser is real estate, descends to his heirs, and does not go to his executors or administrators.' Now, why cannot such property be taxed by its proper denomination as real estate? When sold, the Government, until the patent shall issue, holds the mere legal title for the lands in trust for the purchaser, and any second purchaser would take the land charged with the trust. Whether, therefore, the fee to the lands be to the company or held by the United States in trust for the company, it is considered that the company possess such an interest in the lands as subjects them to taxation."

We are therefore of the opinion that, plaintiff being the owner of the equitable title to the lots in controversy, they are chargeable with the general tax and special assessment complained of, and that the court did not err in dissolving the temporary injunction against the defendants in error.

The judgment of the trial court is therefore affirmed.

Dunn, Hayes, and Williams, JJ., concur; Kane, C. J., absent.