## ROSE v. STALCUP, County Treasurer.

No. 10924—Opinion Filed June 1, 1920.

(Syllabus by the Court.)

### Taxation — Property Subject — Surface of Choctaw-Chickasaw Mineral Lands.

On the 28th day of October, 1917, pursuant to the acts of Congress approved February 19, 1912 (37 Stat. L., 67), as amended by the acts of Congress approved August 24, 1912 (37 Stat. L., 518-531), providing for the sale of the surface of the segregated coal and asphalt lands of the Choctaw and Chickasaw Tribes of Indians, under rules and regulations to be prescribed by the Secretary of the Interior, R. was the successful bidder for certain tracts of land offered for sale under the rules and regulations prescribed. On the date of sale, 25 per cent. of the amount of the bid for the respective tracts was paid, and within 15 days thereafter the balance of the 75 per cent. was paid and a certificate of purchase was issued by the Superintendent for the Five Civilized Tribes, which certificate entitled the purchaser to the immediate possession of the tracts of land so purchased. Held, that the lands were properly placed upon the assessment rolls for the year 1918 for taxation, notwithstanding the patent was not issued until sometime after the first of January, 1918.

Error from District Court, Haskell County: E. F. Lester, Judge.

Action by Sam Rose against R. E. Stalcup, County Treasurer of Haskell County, to recover tax payment made under protest. Judgment for defendant and plaintiff brings error. Affirmed.

E. O. Clark, for plaintiff in error.

Duke Frederick, Co. Atty. of Haskell County, and Fred H. Fannin, for defendant in error.

PITCHFORD, J. This is an appeal from a judgment of the district court of Haskell county. The appeal involves, in substance, the following facts: On the 28th day of October, 1917, Sam Rose purchased at a public land sale, held at Stigler, Oklahoma, under rules and regulations prescribed by the Secretary of the Interior, certain segregated

lands of the Choctaw and Chickasaw Indians, situated in Haskell county, Oklahoma, paying therefor, on the date of sale, one-fourth of the purchase price, and the balance within 15 days thereafter, and receiving from the Superintendent for the Five Civilized Tribes a final receipt for the final payment thereof, this final receipt being designated as a "certificate of purchase." Thereafter the county assessor of Haskell county placed the lands so purchased on the assessment rolls of said county for the year 1918, at the amount so paid by the purchaser. The purchaser paid the first half of the taxes for the year 1918 under protest and commenced action in the district court of Haskell county to recover the amount so paid.

The judgment of the district court was that the lands so purchased were liable for taxes for the year 1918.

The single question involved in this appeal is whether the surface of segregated coal and asphalt lands, upon which the full payment had been made and the final receipt or certificate of purchase had been issued to the purchaser prior to January 1, 1918, was subject to taxes for the year 1918.

Section 2, art. 1, chap. 107, Sess. Laws 1915, p. 142, provides:

"All taxable property shall be listed and assessed each year at its fair cash value, estimated at the price it would bring at a fair and voluntary sale, in the name of the owner thereof on the first day of January of each year, as soon as practicable on or after the fifteenth day of January, including all property owned on the first day of January of that year, * * *. If any real estate shall become taxable during the time between the period for assessing real estate, the county assessor shall assess same for taxation and place the same upon the tax rolls."

This was the statute in force on January 1, 1918. Was plaintiff, on that date, the owner, within the meaning of this statute, of the lands involved in this action? The cause was submitted to the trial court upon an agreed statement of facts, the fifth paragraph of the same being as follows:

"That thereafter, under and pursuant to said acts of Congress and said rules and regulations prescribed by the Secretary of the Interior, a sale of the surface of the segregated coal and asphalt lands, including the lands described in plaintiff's petition, was advertised to be held at Stigler, in Haskell county, state of Oklahoma, on the 28th day of October, 1917. That the plaintiff, Sam Rose, and the persons from whom he purchased were present at said sale and were the highest bidders for the respective tracts of land described in plaintiff's petition; that at the conclusion of the bidding on each tract of land at said sale the successful bidder was given a statement, a blank copy of which is hereto attached, marked 'Exhibit B,' and made a part of this agreed statement of facts. That, thereafter and on the same day the successful bidder presented himself according to custom to a representative of the cashier of the Commissioner for the Five Civilized Tribes and deposited twenty-five per cent. of the amount of the bid for the respective tracts of land and received therefor a receipt, a copy of which is hereto attached, marked 'Exhibit C,' and made a part of this agreed statement of facts. That within fifteen days from that date, the plaintiff and the persons from whom he purchased the lands described in the petition deposited the balance of the seventy-five per cent. of his bid upon said land and received therefor a receipt for final payment, a blank copy of which receipt is hereto attached, marked 'Exhibit D,' and made a part of this agreed statement of facts."

While the rules and regulations so prescribed reserved the right to reject any and all bids, there was a further provision that immediately after any sale, schedules of the successful bidders should be prepared and submitted to the Secretary of the Interior, or such officer as he might designate, for consideration and approval, such approval to be subject to the condition that the Secretary of the Interior might by formal order set aside and vacate any proposed sale for failure of the prospective purchaser to pay any part of the purchase price or the interest thereon when the same became due, or for any other good reason; also, in such case, by formal order, to forfeit to the Choctaw and Chickasaw Nations any and all of the purchase money paid as a guaranty of good faith. As we understand the regulations prescribed, the authority was given to the Superintendent for the Five Civilized Tribes to approve the sale, and by reference to "Exhibit D" we find the same is designated as "Certificate of Purchase, Surface of Segregated Coal and Asphalt Lands" In this exhibit we find that the purchaser is entitled to the immediate use and possession of the surface of the lands purchased, but that no drilling or mining for minerals thereon, including oil and gas, shall be permitted, nor merchantable timber thereon disposed of, nor any stone or sand removed therefrom until the full purchase price has been paid.

It is the contention of the purchaser that the sales were not approved by the Secretary of the Interior until sometime in February, 1918, and that no certificate of purchase was ever issued by the Secretary of the Interior. The failure of the Secretary of the Interior to issue the certificates of purchase convinces us that the Superintendent for the Five Civilized Tribes was the officer desig-

nated to approve the sale; consequently, there was no necessity for a certificate to be issued by the Secretary of the Interior.

The purchaser had fully performed every requirement to entitle him to a patent prior to the 1st day of January, 1918; while the patent was not issued until after the 4th day of February, 1918, yet when the same was finally issued, it related back to the date of the original purchase.

Section 21 of the rules and regulations prescribed by the Secretary of the Interior provides:

"As soon as full payment is made for any tract of the land purchased under these regulations, a deed shall be issued, conveying said land to the purchaser without any reservations, except in the case of the segregated coal and asphalt land where the coal and asphalt are reserved."

In 37 Cyc. 792, it is said:

"While ordinarily the owner of property for the purpose of taxation is the person having the legal title or estate, an equitable estate or interest in land is subject to taxation, if within the terms of the statute imposing the tax. * * *"

The lands in controversy were entered upon the tax rolls at the exact amount paid by the purchaser. Either the money then in possession of the government was held in trust for the purchaser and liable to be assessed for taxes, or the purchaser was entitled to a patent. In other words, on the 1st day of January the purchaser had complied fully with every requirement to entitle him to a patent; that is, the full purchase price had been paid, possession of the lands had been taken by the purchaser, or he was entitled to the possession.

The rule is more fully stated in 35 L. R. A. (N. S.), p. 670, as follows:

"The general rule obtaining as to the right of a state to tax property which has been granted or sold by the United States government, and the title thereto or a lien thereon retained in favor of the public, has been well stated by Mr. Justice Elliott, in State v. Itasca Lumber Co., 100 Minn. 355, 111 N. W. 276, as follows: 'Usually the possession of the legal title by the United States government determines both the fact and the right of ownership. With respect to the public domain, there is one exception to this general rule, which is as well settled as the rule itself. When Congress has prescribed the conditions upon which portions of that domain may be alienated, and provided that, upon the performance of the conditions, the United States shall issue a patent to the purchaser, and all the conditions are complied with, it only remains for the United States to issue the patent, and in the mean-

time it holds the legal title in trust for the purchaser. When the government has no longer any right or interest in the property which would justify it in withholding the patent, and the purchaser is in possession, the latter will be treated as the beneficial owner. This exception rests upon the principle that he who has the right to property and is not excluded from its enjoyment, shall not be permitted to use the legal title of the government to escape his just share of taxation. But before the land can be taxed by the state as the property of the beneficial owner, a perfect equitable title must be vested, and the consideration fully paid to the United States.'"

Continuing on the following page, there is cited Cass County v. Morrison, 28 Minn. 257, 9 N. W. 761, the controversy there being as to the taxability of certain lands embraced within a grant made by the United States to the Northern Pacific Railroad Company, and subsequently sold by the railroad to the defendant. In holding that the lands were taxable, in the hands of the defendant, notwithstanding no patent had ever issued therefor, Berry, J., said:

"From the concessions of the parties, it appears that, except as respects the payment of cost mentioned, everything has been done required by the terms of the grant to entitle the company to a complete, perfect, and absolute title in fee to the lands in controversy, and to entitle it to receive the proper evidence of such title from the United States. In other words, the company has earned and paid for the lands by complying with the conditions of the grant, and if a formal conveyance be necessary to vest it with the legal title, it is, nevertheless, in the fullest sense, the equitable owner of the land, and the legal title is held by the United States as a naked trustee solely and simply for the company's use and benefit. This is so, irrespective of any notion of the grant in praesenti, and its effect in conferring title in praesenti.

"Nor does the fact that the issuance of the patent is delayed by the government, after the purchaser has entered on the land, for the purpose of making an investigation concerning the entry, exempt the land from taxation, especially when, at the time of the investigation, the equitable title is in the purchaser and the patent finally issues upon the original purchase and entry."

In Morris et al. v. Board of Commissioners of Love County, 74 Oklahoma, 177 Pac. 900, the syllabus reads:

"Where nontaxable Indian lands become taxable on alienation, a vendee, who takes possession of such lands under an executory contract of sale, has the equitable title thereto and is the owner thereof for the purpose of taxation."

In Wheeler v. Merriman (Minn.) 15 N. W. 667, we have the following:

"The facts disclosed by the record are these: One White purchased the land of the United States on the second of October, 1857, by locating upon it a military bounty land-warrant. The issue of a patent upon this location was suspended on account of a caveat being filed in the general land-office against the warrant by the owner thereof, on the ground that the assignment was forged, and on that ground the warrant was canceled in November, 1864. * * * The plaintiff, who was the grantee of White, the locator, in July, 1880, paid to the United States $100 in lieu of the canceled warrant and, the substitution being thus made, a patent issued to White upon his original location of October 2, 1857. Had this location been canceled and the land reverted to the United States and by them been sold to another purchaser, an entirely different question would have arisen. But in this case the location was never canceled, but merely the issue of a patent suspended until the substitution was made, the money being substituted for the warrant and relating back to the original location. * * * It is well settled that land purchased of the United States and paid for, though not patented, is subject for taxation. * * * The entry was finally approved and the patent, when issued, related back to the original location."

In Witherspoon v. Duncan, 21 Ark. 240, appealed to the Supreme Court of the United States, reported in 4 Wall, 210, 18 L. Ed. 339, Mr. Justice Davis said:

"It does not appear from the record why the patent was so long delayed; but the claim' was finally approved on the original proofs, and the patent, when issued, related back to the original entry. The lands were, therefore, under the laws of the state, properly chargeable with taxes from the date of the first entry.* * *"

In Bowls v. Oklahoma City et al., 24 Okla. 579, 104 Pac. 902, 24 L. R. A. (N. S.) 1299, by an act of Congress, the United States granted to Oklahoma City a tract of land for the benefit and use of the city's free schools. The act provided for the platting of the land, and that when a sale thereof had been made and purchase money all paid patents should issue. On December 24, 1894, Bowls and the city entered into a contract of sale for some of the land, and pursuant to the agreement Bowls paid $25 and agreed to pay the sum of $32 thereon before one year from said date, and the further sum of $75 on or before December 24, 1912. It was there held that "a vendee of realty in possession under an executory contract of sale at the date of the assessment is the real owner for the purpose of taxation, and that, too, whether prior to said sale, the same was subject to taxation· in the hands of his vendor or not."

In Miller v. Corry, 15 Iowa, 166, cited in Bowls v. Oklahoma City et al., supra, the court said:

"By the terms of the contract the vendee had a right to the possession of this land before these taxes were assessed, and this right, according to the finding of the court below, he exercised and enjoyed from and after the time thus fixed. * * * As a rule, the party deriving the sole profit from the use of the land, in the absence of some stipulation, should pay for the accruing taxes."

In Boone v. Porter, 45 Okla. 615, this court, in deciding the question of who was the owner of the land in that case, within the meaning of the tax laws, at assessing time, held that the plaintiff was the owner, and as its reason therefor said:

"This for the reason that he was a vendee in possession under an executory contract of sale at the time of their assessment."

In Bowls v. Oklahoma City et al., 24 Okla. 579, we held such an owner to be the real one for the purpose of taxation.

The judgment of the trial court is, therefore, affirmed.

HARRISON, V. C .., and KANE, JOHNSON, McNEILL, and RAMSEY, JJ., concur.