LEDERMAN v. BODOVITZ et al.

No. 32322.  March 4, 1947.

*177 P. 2d 1002.*

Geo. N. Otey and R. Rhys Evans, both of Ardmore, for plaintiff in error.

L. A. Winans, of Duncan, for defendants in error.

RILEY, J. This appeal presents the question of when unallotted tribal land of the Choctaw and Chickasaw Nations, which has been sold under regulations promulgated by the Department of the Interior, becomes taxable.

On July 14, 1925, J. A. Bodovitz, plaintiffs' grantor, purchased the unallotted tract here involved, consisting of ten acres of land in Stephens county, from the Choctaw and Chickasaw Nations, upon his bid of $260. The regulations were promulgated under provi-

sions of section 14 of the Act of Congress, July 1, 1902, 32 Stat. at L. 641, 642, and section 16 of the Act, April 26, 1906, 34 Stat. at L. 137-143. The regulations, in part, provided that the terms of the sale should be 25% in cash at the time of the sale and the balance in three equal, annual installments of 25% each, payable in one, two, and three years, respectively, from the date of the sale, and that the purchaser shall also pay 5% interest per annum from the date of sale on all deferred installments. The regulations further provided:

"If default be made in any payment when due, all rights of the purchaser thereunder shall, at the discretion of the Secretary of the Interior, cease, and be thereby extinguished, and the land shall be taken possession of by the said Secretary of the Interior for the benefit of the Choctaw, Chickasaw and Creek Nations, and the money paid on the purchase price shall be forfeited to said nations. As soon as full payment is made for any tract of the land purchased under these regulations, a deed shall be issued conveying said land to the purchaser without any reservations, except in the case of segregated coal and asphalt land where coal and asphalt are reserved . . ."

At the time of purchase, Bodovitz paid $65, which was 25% of the bid, received an official receipt therefor, and went into possession of the land thereunder. Other payments were made as hereinafter set forth, the last of which was on August 12, 1937. The Secretary of the Interior had not, in the exercise of his discretion, canceled the sale nor declared the payments theretofore made, forfeited. In the meantime, on February 21, 1927, J. A. Bodovitz had conveyed the land to plaintiffs, by warranty deed. That deed was recorded in 1932. September 13, 1937, a deed was executed by William A. Durant, Principal Chief of the Choctaw Nation, and Douglas A. Johnston, Governor of the Chickasaw Nation, conveying the land to J. A. Bodovitz. The deed was approved by the Secretary of the Interior September 23, 1937, and was filed for record in the office of the Superintendent of the Five

Civilized Tribes at Muskogee, Okla., September 24, 1937, and in the office of the county clerk of Stephens county July 1, 1942.

The taxing authorities of Stephens county assessed taxes against the land for the years 1931 to 1940, inclusive. At the November, 1938, annual sale, the county treasurer advertised the land for delinquent taxes for the year 1937 and prior years. There being no other bidder, the land was bid in by the county, and was advertised and sold at resale in 1941 to defendant Julius Lederman.

Plaintiffs being in possession then commenced this action to cancel the resale tax deed and quiet title. The sole issue, and it was so stipulated at the trial, is whether the land was taxable for the years 1931 to 1937, inclusive. The trial court held the land not taxable for those years and entered judgment for plaintiffs, and defendant Lederman appeals.

Defendant contends that the land was taxable for the period from 1931 to 1937, and in support of the contention, cites Morris v. Board of Co. Com'rs, 74 Okla. 199, 177 P. 900; Bowls v. Oklahoma City, 24 Okla. 579, 104 P. 902; Boone v. Porter, 45 Okla. 615, 146 P. 584; Zimmerman v. Board of Co. Com'rs, 65 Okla. 10, 162 P. 489; Clark v. Board of Co. Com'rs, 143 Okla. 18, 285 P. 127; and Board of Co. Com'rs v. Oklahoma Tax Com., 185 Okla. 625, 95 P. 2d 605.

The latter case has no application, for the reason that there the owner of a tractor and the county, to which the tractor was leased for a period of five months, were seeking to have the tractor exempted from the regular motor vehicle registration fee, or motor excise tax, not because they claimed the county was the owner of the tractor, but because it was in the possession of the county and was being used for public or county purposes.

The Boone, Zimmerman, and Clark Cases have no application, for the reason that, as pointed out in each case, the

statute under which state school land is sold requires the School Land Commission, as soon as practicable after the sale, to transmit to the clerk of each county in which such lands are sold, a detailed description of each parcel of land so sold, and further provides:

"The same shall thereupon become subject to taxation the same as other land."

But in such case, no tax deed can issue for such land. The purchaser becomes subrogated to the rights of the original purchaser from the School Land Commission.

Bowls v. Oklahoma City, supra, in a measure supports defendant's contention. But it appears to be based upon an erroneous holding that Bowls, who purchased the land from the city but had not fully paid the deferred installments, was "likened to one who holds a final certificate for lands purchased from the United States of which said lands it has been held that the purchaser holds the equitable title, and while, of course, not taxable in the hands of the United States, are taxable in his hands."

Examination of the cases bearing on that question will disclose that in purchases of land from the United States, a final certificate does not issue until the purchaser has paid the purchase price in full. It is from that time, and that time only, after the purchaser has done everything necessary to entitle him to a patent, and until a patent is issued, that the purchaser holds the equitable title and the United States holds the legal title in trust for the purchaser. This is clearly pointed out in Rose v. Stalcup, Co. Treas., 78 Okla. 268, 190 P. 396. Therein was involved the sale of the surface of certain segregated coal and asphalt land of the Choctaw and Chickasaw Nations, under rules and regulations of the Secretary of the Interior. In that case, on October 28, 1917, the purchaser was the accepted bidder for the lands involved. He paid 25% of the purchase price on that day and within 15 days thereafter, or on or before November 12, 1917, paid in full the balance of the purchase price, and received a final receipt therefor, it being designated as a "certificate of purchase." Patent was not issued until February 4, 1918. The land was assessed for taxes for the year 1918. Rose contended the land was not taxable for that year because the title thereto was still in the Choctaw and Chickasaw Nations on January 1, 1918. Going to the question, the court quotes with approval from 35 L.R.A. (N.S.) 670 the following:

"The general rule obtaining as to the right of a state to tax property which has been granted or sold by the United States government, and the title thereto or a lien thereon retained in favor of the public, has been well stated by Mr. Justice Elliott, in State v. Itasca Lumber Co., 100 Minn. 355, 111 N. W. 276, as follows: 'Usually the possession of the legal title by the United States government determines both the fact and the right of ownership. With respect to the public domain, there is one exception to this general rule, which is as well settled as the rule itself. When Congress has prescribed the conditions upon which portions of that domain may be alienated, and provided that, upon the performance of the conditions, the United States shall issue a patent to the purchaser, and all the conditions are complied with, it only remains for the United States to issue the patent, and in the meantime it holds the legal title in trust for the purchaser. When the government has no longer any right or interest in the property which would justify it in withholding the patent, and the purchaser is in possession, the latter will be treated as the beneficial owner. This exception rests upon the principle that he who has the right to property and is not excluded from its enjoyment, shall not be permitted to use the legal title of the government to escape his just share of taxation. But before the land can be taxed by the state as the property of the beneficial owner, a perfect equitable title must be vested, and the consideration fully paid to the United States.' "

Morris v. Board of Co. Com'rs, supra, is distinguishable in that there the sale was not by the United States nor by the

United States through the Department of the Interior. It was a sale of land by an individual allottee, which was not taxable in the hands of the allottee. The purchase contract was entirely different. The purchaser gave his promissory notes for the deferred payments; the allottee made and executed a deed conveying the land to the purchaser; and the notes and deed were placed in a bank with an escrow agreement that on payment of the notes, the deed was to be delivered to the purchaser. There, the grantor placed the deed beyond his control, at least so long as the notes were paid as they became due. The opinion does not disclose what the escrow agreement provided in case of default in payment of the notes, or any of them. It does not appear that the vendor had the right, in the event of default in payments, to declare all payments theretofore made, forfeited and retake possession of the land.

Hoskins v. Abbott, 191 Okla. 158, 127 P. 2d 815, holds:

"Where unallotted lands of the Choctaw and Chickasaw Nations are sold under the supervision of the Department of the Interior and the purchase price is fully paid and certificate of sale issued to the purchaser, such lands thereupon become subject to assessment for ad valorem taxation on the first day of January following, notwithstanding a deed thereto has not been issued to the purchaser pursuant to such sale."

That case lays down the correct rule as to when unallotted lands of the Choctaw and Chickasaw Nations, sold by or through the Department of the Interior on deferred payments, become taxable by the state authorities. It is on the first day of January following the date on which the purchase price is fully paid, and not before. This is true notwithstanding a deed has not at that time been issued to the purchaser. In other words, it is when, and only when, the purchaser has fully paid the purchase price and thereby done everything necessary to entitle him to a deed, that the full, equitable title passes. The legal title passes upon approval and delivery of a deed properly executed.

In this case, as shown by the records of the Superintendent of the Five Civilized Tribes, at Muskogee, the purchaser bid the sum of $260 for the land. He paid $65, 25% thereof, in cash. That left a balance of $195, payable in three equal, annual installments, which installments bore interest at the rate of 5% per annum. He paid no more until August 16, 1928, at which time he paid the sum of $200. $30.10 thereof was then due as interest and he was given credit for that amount as interest. The balance of the $200 payment, $169.90, was credited on the principal. That left an unpaid balance on the principal of $25.10. Final payment was made August 16, 1937. He then paid $37.53. There was then due interest on the $25.10 from August 16, 1928, to August 12, 1937. He was given credit for interest in the amount of $12.43, and the balance of the $37.53 payment, $25.10, was credited on the principal, which was exactly the full balance of the purchase price. Then it was on August 12, 1937, when the purchaser became the equitable owner of the land. Deed was delivered September 23, 1937. It was then that the full legal title passed. Under the rule stated in Hoskins v. Abbott, supra, the land became taxable on January 1, 1938. Therefore, the land was not taxable for the year 1937 and prior years, and was not legally sold to the county at the 1938 annual sale.

The court should have required the plaintiffs to make good their tender and pay all delinquent taxes, interest, penalties, and costs against the land for the year 1938 and subsequent years. The judgment is so modified, and, as modified, affirmed.

DAVISON, V.C.J., and OSBORN, BAYLESS, WELCH, and CORN, JJ., concur. GIBSON, J., concurs in result. HURST, C.J., dissents.

GIBSON, J. (concurring in result). I concur in the result reached, but not

in the reasoning of the majority opinion.

In my opinion the lands in the instant case were nontaxable prior to the full payment of the purchase price because previous to that time the purchaser, under the terms of the contract of purchase, had no greater right than that of a holder of an option, which right could not ripen into an equitable title before full payment was made. Such being true, the nontaxability of the land turns solely on the question of the existence of an estate which is a condition precedent to any question of the taxability of such an estate.

In the majority opinion what is said to be the applicable doctrine is stated as follows:

"Examination of the cases bearing on that question will disclose that in purchases of land from the United States, a final certificate does not issue until the purchaser has paid the purchase price in full. It is from that time, and that time only, after the purchaser had done everything necessary to entitle him to a patent, and until a patent is issued, that the purchaser holds the equitable title and the United States holds the legal title in trust for the purchaser."

This pronouncement does not conflict with the law applicable to the instant case, but by reason of its breadth it can and does conflict with the law applicable to cases where equitable title does pass prior to full payment of the purchase price and the question of taxability is to be determined on other grounds.

The rule would negative the existence of an equitable title in purchaser in cases where the sole interest of the United States in the land would be a lien to secure the purchase price, and it is so recognized in the authority quoted by the majority in support of the announced rule. That such does not correctly state the law in light of the most recent decision of the United States Supreme Court is reflected in the holding in S. R. A., Inc., v. State of Minnesota (U. S.) 90 L. Ed. 851, 66 S.

Ct. 749. Therein it is expressly held that the equitable title may pass under executory contract of sale prior to full payment, and that in cases, as there, where the United States merely holds the land as security for the purchase price, the same does pass prior to full payment. And in contemplation of such situation the court indicates that the authority for the tax is limited only where it impairs the immunity of United States property interest. Under the authority of that case the holding of this court in Bowls v. Oklahoma City, 24 Okla. 579, 104 P. 902, to the extent that it found that the equitable title passed to the purchaser, is sound and the criticism thereof by the majority on that ground is not justified. Whether the decision there is wrong because it held such equitable title taxable involves a question not material here, and hence the instant case can afford no justification for questioning the holding there on that ground.

In the cited United States Supreme Court case, the court, while declaring the situation where equitable title passes to the purchaser, recognized that there are sales where the equitable title remains in the United States and cites cases arising under the Reclamation and Homestead Acts as illustrations. There the court, in construing the contract, said: "In this instance there were no specific words in the contract with petitioner which were intended to retain sovereignty in the United States." There the contract provided for repossession by United States upon default in payment, retention of prior installments paid and with authority in United States to resell the property and recover of the purchaser any resulting deficiency. The application of the proceeds of sale to payment of the purchase price is a recognition of a title in the purchaser. On the other hand, in the instant case, under the controlling regulations, there was a retention of complete control of the title without recognition of any right in the purchaser other than a qualified possessory use while not in default.

There was no reversion of power to the United States over an estate in a purchaser. The estate and power remained in the United States and the exercise of the power was merely suspended or held in abeyance pending opportunity for compliance with terms of sale which were a condition precedent to the incidence of any recognized estate in the purchaser.

The questions, whether in situations different from the one here involved an equitable estate does or does not pass to the purchaser prior to full payment, and if so whether a tax thereon can be levied in view of the property right in the United States, are foreign to that which is decisive of the instant case, and I feel that the discussion thereof and the review of the earlier decisions on the strength of the declared rule are necessarily misleading.

HURST, C.J. (dissenting). The stipulation on which the case was tried recites that on March 17, 1925, the bid of J. A. Bodovitz "for the *purchase*" of the land was approved and a receipt for one-fourth of the *"purchase price"* was issued to him, and that upon the acceptance of his contract of *"purchase"* he was entitled to the use and possession of the land, and that he accordingly took possession thereof. The deferred installments drew interest. Thus, the payments were treated as part of the purchase price, not as consideration for an option. When the bid was approved and the down payment was made, the transaction became an executory contract of sale, not a mere option to purchase, and the equitable title then vested in Bodovitz, despite the fact that the Secretary of the Interior reserved the right, *in his discretion* (which was not exercised), to rescind the contract for failure to pay the deferred installments when due. Whether the equitable title should ever ripen into a legal title depended entirely upon compliance by the purchaser with the terms of sale, which is always the case in executory contracts of sale. No provision in the regulations is called

to our attention to the effect that the sole remedy of he Secretary of the Interior was to rescind the contract on failure to pay the deferred installments when due. On default in making any such payment, the Secretary of the Interior could, in his discretion, either rescind the contract and forfeit all payments made or enforce payment of the delinquent installments. In support of these rules, see 55 Am. Jur. 496, 782, 853, 904; 66 C. J. 490, 708, 751, 1210; S.R.A. Inc. v. State of Minnesota, 66 S. Ct. 749, 90 L. Ed. 851; Gompert v. Frost, 188 Iowa, 1039, 177 N. W. 71; Dunn v. Yakish, 10 Okla. 388, 61 P. 926; Leedy v. Ellis County Fair Ass'n, 188 Okla. 348, 110 P. 2d 1099.

In holding that when nontaxable government or Indian land is sold under an executory contract of sale the full purchase price must be paid before the equitable title is vested in the purchaser so as to be subject to state taxation, the majority opinion is contrary to the rule that has obtained in this state since 1909, when the decision in Bowls v. Oklahoma City, 24 Okla. 579, 104 P. 902, was rendered. This rule was adhered to in Morris v. Board of Com'rs, 74 Okla. 199, 177 P. 900. The cases of Rose v. Stalcup, 78 Okla. 268, 190 P. 396, and Hoskins v. Abbott, 191 Okla. 158, 127 P. 2d 815, relied upon in the majority opinion, are not contrary to this view, since in both cases the purchase price was fully paid before the lands were assessed, and any statement intimating that such lands were not taxable before the deferred payments were fully made was obiter dictum. Furthermore, Hoskins v. Abbott followed Rose v. Stalcup, which in turn cited with approval the Bowls and Morris Cases.

Here the legal title remained in the Indian Nations only as security for the payment of the balance of the purchase price, and the situation was no different in effect than it would have been had a deed been delivered and a mortgage taken back for the balance of the purchase price. Such was the view ex-

pressed by the United States Supreme Court in S.R.A., Inc., v. Minnesota, above, which holds that the states may ordinarily assess land sold by the Federal Government under an executory contract of sale while part of the purchase price remains unpaid and where the purchaser is not entitled to a deed until the purchase price is fully paid, despite the fact that the purchase contract may be rescinded and the consideration forfeited for failure to pay deferred installments when due. The court there distinguished the case of sale of an abandoned post office site from cases, such as Irwin v. Wright, 258 U. S. 219, 42 S. Ct. 293, dealing with the taxability of land under the homestead laws, where the public policy prevents the homesteads from being taxed before final payment is made. No such public policy is involved in the instant case.

The majority opinion fails to give effect to sections 5, 6, and 8 of article 10 of the State Constitution, and sections 12317, 12319, and 12581 of the 1931 Compiled Statutes, which were in effect when the taxes here involved were levied. The equitable title of the purchaser constituted "property" subject to taxation under said constitutional and statutory provisions. The result would be that if the land should be sold for taxes prior to the final payment, the purchaser would take title burdened with the unpaid installments, just as a resale for ad valorem taxes, without purporting to sell for the delinquent special assessments, is subject to the lien for the special assessments (Board of Commissioners v. City of Wewoka, 191 Okla. 142, 127 P. 2d 826), and just as the resale of oil or gas producing land is subject to the mineral rights (McNaughton v. Beattie, 181 Okla. 603, 75 P. 2d 400), despite the fact that the statute (68 O. S. 1941 § 432f) provides that a valid resale shall vest in the purchaser "an absolute and perfect title in fee simple." Obviously, the purchaser at a tax sale gets title to only such estate as is assessed and to which the tax lien attaches. McNaughton v. Beattie, above.

Thus, where an undivided interest in land is subject to taxation and the remaining interest is exempt, the undivided interest subject to taxation is properly assessed and the lien attaches only to that interest. 68 O. S. 1941 § 15.9.

If the rule announced in the majority opinion is to be adhered to, the result will probably be that when the Federal Government sells the many tracts of land acquired recently for naval bases, air bases, powder plants, etc., the lands will remain off the tax rolls until they are fully paid for, despite the fact that there is no Federal policy against its assessment as held in S.R.A., Inc., v. Minnesota, above. The schools and other local subdivisions will thereby be deprived of much needed revenue, or that much greater burden will fall upon the other property owners. To hold that the vendee having the beneficial use of the property can, by failing to pay the last dollar due on the purchase price, keep the property off the tax rolls indefinitely is unreasonable and contrary to the public interest and invites tax evasion.

For the foregoing reason, I respectfully dissent.