## LOTH-HOFFMAN CLOTHING CO. v. SCHWARTZ.

No. 7298—Opinion Filed Dec. 3, 1918.

(176 Pac. 916.)

**1. Sales—Objection to Return Part of Merchandise—Buyer's Liability for Price.**

Where, in a contract of purchase of merchandise by sample, the seller agrees with the purchaser that the purchaser may return part of such merchandise to the seller and retain a part of such merchandise as he may elect, purchaser is liable to the seller only for the value of such merchandise as is retained by him.

**2. Tender—Effect—Discharge from Subsequent Interest.**

A valid, legal tender of money by a debtor which is refused by a creditor, does not operate as a satisfaction of the debt, and is no bar to an action on the debt; the effect of such tender, when the tender is maintained, being to discharge the debtor from liability for interest subsequent to the tender and costs afterwards incurred.

**3. New Trial—Verdict Not Warranted by Evidence.**

When the jury, unwarranted by the evidence and contrary to the instructions of the court, render a verdict, the court commits prejudicial error in not granting a new trial.

(Syllabus by Collier, C.)

Error from District Court, McClain County; R. McMillan, Judge.

Action by the Loth-Hoffman Clothing Company against Paul Schwartz. Verdict and judgment for defendant, and plaintiff brings error. Reversed and remarked. Motion for new trial overruled.

Nichols & Lyle, for plaintiff in error.

L. T. Cook, for defendant in error.

Opinion by COLLIER, C. This is an action brought by the plaintiff in error against the defendant in error, to recover upon an account for merchandise sold by plaintiff in error to the defendant in error. Hereinafter the parties will be designated as they were in the trial court.

The petition is in the usual form for actions upon account. The answer of the defendant, after a general denial, alleges:

That plaintiff and defendant entered into a contract about the 1st day of January, 1913, whereby defendant agreed to purchase from plaintiff certain goods, wares, and merchandise for certain prices as set forth in an itemized statement, upon the conditions that the goods delivered in pursuance of said contract were as good in quality, workmanship, style, and finish as the sample or samples of said goods then and there exhibited by plaintiff to defendant, and the plaintiff agreed to furnish and deliver to defendant said goods, wares, and merchandise at said prices according to the sample exhibited to defendant. That thereafter, to wit, on or about the 1st of April, 1913, the first shipment of said goods, wares, and merchandise under said contract was made by plaintiff to defendant, and upon the arrival and examination of said goods, wares and merchandise, defendant discovered that said goods, wares, and merchandise were not according to the sample, in that they were different and defective in quality, workmanship, style, and finish, and were nothing more than a cheap imitation of the goods, wares, and merchandise that he agreed to purchase, and as represented by the sample or samples exhibited to him by the plaintiff.

That immediately thereafter the defendant packed up all of said goods, wares, and merchandise except 6 pairs of men's pants at $3.50 per pair, aggregating $21, and 12 pairs of men's pants at $2.50 per pair, aggregating $30 and reshipped the same to plaintiff at St. Louis, Mo., and notified the plaintiff by letter that he had returned said goods to

them for the reasons above stated. That on or about the 15th day of April, 1913, a second shipment of goods, wares, and merchandise under the contract above set forth was received by the defendant from plaintiff, and upon the examination of said goods the defendant discovered that said goods were different and defective in quality, workmanship, style, and finish from the goods that he agreed to purchase from plaintiff and as represented by the sample or samples exhibited to him, and that defendant immediately packed up and shipped back to plaintiff at St. Louis, Mo., all of said goods except 6 pairs of men's pants at $2.50 per pair, a total of $15, and defendant further notified plaintiff by letter that said goods had been returned to them for the reasons above stated.

That the total amount of goods shipped by the plaintiff to defendant and kept by the defendant amounted to $66, and according to the contract defendant was to have a discount of 5 per cent. if said goods were paid for within 30 days after May 1, 1913. That on or about the 20th day of May, 1913, defendant forwarded to plaintiff a draft for $62.70, which represents $66, less 5 per cent. discount, as above set forth, and was tendered to plaintiff in full settlement of the goods that he kept out of the two shipments above referred to.

That defendant has fully complied with his part of the contract entered into between him and plaintiff, and now stands ready and willing to comply with each term and condition thereof. That plaintiff has neglected, failed, and refused to perform its part of said contract, in that plaintiff failed, refused and neglected to furnish and deliver to defendant goods, wares, and merchandise of the quality, workmanship, finish, and style that they had represented and agreed upon.

To which said answer a reply was filed by plaintiff, denying each and every material allegation set forth in defendant's answer in paragraph 3, in so far as it alleged that said goods, wares, and merchandise were defective in quality, workmanship, style, and finish, and that they were nothing more than a cheap imitation of goods, wares, and merchandise, and that the same did not conform to the samples.

Second. Said plaintiff alleges and states the fact to be that each and every article of merchandise shipped to said defendant was of good quality, workmanship, style, and finish, and were not defective or inferior to the samples shown.

Third. Said plaintiff denies each and every other material allegation in the answer

inconsistent with plaintiff's right to recover.

Depositions were taken, and the following testimony was elicited from Morris Hoffman: That he was the vice-president and traveling salesman of Loth-Hoffman Clothing Company; that he covered the states of Oklahoma and Texas; that he had stopped at Purcell, Okla., and sold Paul Schwartz trousers for a number of years, and Paul Schwartz had always returned part or all of them: that on the 1st day of January, 1913, he called upon Mr. Schwartz and sold goods to him by sample; that he selected the samples in the sample room, and brought them to his store, and he placed his order from the samples and stipulated the quantity and sizes for each pattern; that he was familiar with the stock of garments carried in trade by the Loth-Hoffman Clothing Company; that the samples are picked from stock and the company's deliveries are identically the same; that the company's deliveries are always identically the same in quality workmanship, style, and finish as their samples; that he had sold this same class of goods to a great many people in the immediate neighborhood of Purcell; and that there was not a merchant of those he referred to that ever raised any objection to the quality of the company's goods, to the price or the make.

Jacob Loth testified that he was the president of the Loth-Hoffman Clothing Company; that he was familiar with the accounts of said company; that the said company had an account against Paul Schwartz of Purcell, Okla.; that he is familiar with Mr. Hoffman's handwriting, and that the order is in his handwriting; that these goods were shipped, the one invoice of $162, was shipped on or about March 14, 1913, and the other invoice of $81 on or about April 3, 1913; that the goods as shown upon the duplicate invoices correspond to the goods shown upon the original order; that they make all their goods in their own factory under their own supervision, and all garments are made uniformly alike, that is, each grade of goods is made alike and it is impossible for there to be any variation in the make; that there is no difference in the samples and the regular goods carried in stock; that they do not have any special workmen to work upon samples carried by their traveling representatives; that they sold these goods payable May 1st with 6 per cent. discount if paid within 10 days and 5 per cent. discount if paid within 30 days; that Paul Schwartz tendered them, on or about the 20th day of May, 1913, a check for $62.70

which was tendered in full payment of the account; that this check was returned to Mr. Schwartz, and the company wrote him that they had refused to accept the goods he returned and that they would look to him for full payment of his account as per invoices rendered him; that Mr. Schwartz returned these goods to the company very shortly after they were shipped; that they did not accept them; that they received notice from the railroad company to call for the goods, but they notified them that they would not do so, and that they should notify Mr. Schwartz to that effect; that every garment is thoroughly inspected by expert examiners before they leave the factory, and if any garment is defective in any manner whatsoever it is immediately taken out of the general stock and sold as seconds; that he personally saw the goods shipped to Paul Schwartz, Purcell, Okla.; that they were in first-class condition in regard to workmanship, and were identical in material and pattern as selected by Mr. Schwartz.

Paul Schwartz testified that he lived in Purcell and was engaged in gent's furnishing business; that he had a business transaction with the Loth-Hoffman Clothing Company, of St. Louis, Mo., along in January, 1913; that just like the rest of the drummers when they come in and try to sell some goods and show samples, whether they send the same things or not; of course nobody knows that—that is, the biggest portion of them—he bought some goods from him, and, according to the samples he showed him, why, the goods didn't come up, and he looked all the way through the samples; he didn't like to, but there was some defects in them, and he didn't like them; several times the pants came to him, and they wouldn't be delivered exactly the way he wanted them; that he placed the order with Mr. Hoffman; there was some defects in the pants, and he told him about it, and he said, "I will make it just exactly the way that you want to have it, and if it don't suit you and don't come up exactly like you want it —anything you don't like—just return them back," and that was the whole thing that they had between them, and when he received the goods he looked all the way through; there were some goods actually he didn't order at all; they weren't the same patterns: instead of wool it was cotton: he got the goods on April 1st and on April 2d he sent them back, and the second shipment was the very same identical.

The undenied evidence in this case is that the defendant purchased from the plaintiff by sample the goods which are the basis of

this action to the amount of $243; that of said goods all were returned to the plaintiff except to the amount of $66 and that for said $66 the defendant sent plaintiff a draft for $62.70, and demanded that it be accepted in full settlement of account, and that the draft for $62.70 was refused and returned to the defendant; and that the plaintiff refused to take the goods from the depot of the railroad. The evidence was in direct conflict as to whether or not the goods that were shipped by plaintiff to defendant came up to quality, workmanship, style, and finish with the samples that were exhibited to him by the salesman representing the plaintiff and who made the sale to him. At the close of the testimony on behalf of the defendant, the plaintiff requested the court to instruct the jury to return a verdict in favor of the plaintiff and against the defendant for $——— and interest and costs as prayed for, which request was by the court overruled and exception taken and allowed. The court, among other instructions, instructed the jury:

"(4) If you believe from a preponderance of the evidence in this case that the plaintiff sold the bill of goods sued for in this controversy to the defendant by sample, then the court tells you that the obligation rests upon the seller to deliver goods corresponding to the sample, and that if they do not so correspond, that there is then a breach of the contract on the part of the seller, entitling the buyer to reject such goods as do not correspond with the sample, and relieving him from the price thereof, if he should return the same. If you find that Schwartz bought said goods by sample, and that the goods shipped were inferior to and different from the sample by which he bought, then you are instructed that he had a right to return such of the goods as did not correspond with the sample, to keep and pay for such of the goods as did correspond with said sample."

"(6) If you find from a preponderance of the evidence that a portion of said goods did correspond with samples, if you find that they were sold by sample, that he kept the same, then and in that event he should pay for such as he kept."

To the giving of which instructions 4 and 6 the plaintiff duly excepted. The jury returned a verdict for the defendant, to which the plaintiff duly excepted. Timely motion was made for a new trial, which was overruled and excepted to, and error brought to this court.

The uncontradicted evidence is that the defendant contracted to purchase from the plaintiff goods, wares, and merchandise in the sum of $———; that goods in said amount were shipped by plaintiff to and re-

ceived by defendant; that defendant returned to plaintiff part of said goods, retaining part thereof of the value of $66. The evidence is in direct conflict as to the quality, workmanship, style, and finish of the goods in question, but the finding of the jury sustained the contention of the defendant, and is supported by sufficient evidence, and therefore we are precluded on this question.

The further undenied evidence is that when the defendant contracted for said purchase the agent of plaintiff agreed with defendant that "if it don't suit you and don't come up exactly like you want it—anything you don't like—just return them back." It therefore clearly appears that the defendant had the right to retain such of said goods as suited him and return the other, and consequently the well-established rule of law, that to effectuate a rescission of a contract of sale of merchandise the party purchasing must restore or offer to restore all the goods —everything received by him—does not apply in the instant case, and the case of Continental Jewelry Co. v. Pugh et al., 168 Ala. 295, 53 South. 324, Ann. Cas. 1912A, 627, and the many authorities cited by plaintiff in accord therewith are not in point in this case.

We have carefully considered instructions 4 and 6, and are of the opinion that the same are free from reversible error.

The tender of payment for the goods retained by the defendant did not constitute payment for same, but only relieved defendant from the payment of interest from the time of such tender, and made him liable for the costs of this action. 38 Cyc. 162A, and the many authorities there cited. Consequently the plaintiff was entitled to recover the amount due for the goods retained by the defendant without interest since the date of the tender, and to be taxed with the costs of this action, and therefore the verdict of the jury was not only contrary to the instructions of the court, but was unwarranted by the evidence, and the court committed prejudicial error in refusing to grant a new trial.

This cause is reversed and remanded.

By the Court: It is so ordered.