### CLARK v. BOARD of COM'RS of CIMARRON COUNTY et al.

No. 20113. Opinion Filed Feb. 25, 1930.

Rehearing Denied April 15, 1930.

Rizley, Loofbourrow & Sweet, Henshaw & Hough, and E. B. McMahan, for plaintiff in error.

O. S. Shaw, for defendants in error.

ANDREWS, J. Roy S. Jones and his wife were the holders of valid certificates of sale from the Commissioners of the Land Office of the state of Oklahoma covering the south half of section 36, township 5, north, range 7 east C. M. They mortgaged their interest in the land, and at a mortgage foreclosure

sale thereof E. B. Clark, the plaintiff in error, purchased the same.

The land was placed upon the tax rolls after the issuance of the certificate of sale and, prior to the filing of the petition for the foreclosure of the mortgage hereinabove referred to, the county treasurer of Cimarron county, at a resale, sold said land to Cimarron county for the delinquent taxes in the amount of $224.38. Two deeds were executed and delivered by the county treasurer to the chairman of the board of county commissioners of Cimarron county for the use and benefit of Cimarron county and those deeds were recorded. One of the deeds described the southeast quarter of said section and one of them the southwest quarter of said section. The board of county commissioners of Cimarron county sold the land to the defendant in error O. S. Shaw for a consideration of $50 and the payment of the publication fee. amounting to approximately $9.75, and thereafter the board of county commissioners executed and delivered to Shaw two deeds therefor, one covering each of the quarter sections.

Shaw caused the deed to the southeast quarter section to be recorded and presented the same to the Commissioners of the Land Office. He paid the Commissioners of the Land Office the amount delinquent on the payments due on that quarter section, and gave them a note for the balance due on that quarter section, and the Commissioners of the Land Office executed and delivered to him a certificate of sale therefor. His other deed was not recorded.

The plaintiff in error presented to the Commissioners of the Land Office a certified copy of the order of approval of the sheriff's sale, and the Commissioners of the Land Office issued a certificate of sale to him for the southwest quarter of said section.

The defendant in error O. S. Shaw executed and delivered deeds to the defendants in error Henry Luck and E. F. Tolman, which deeds were recorded.

The plaintiff in error filed a petition in the district court of Cimarron county, Okla. alleging that he was the owner of the equitable title to all of said land with the legal title thereto in the state of Oklahoma: alleging the facts as hereinbefore set forth: alleging a tender to the defendant in error Shaw of the amount paid by Shaw to the county for the deeds, with interest at the rate of 18 per cent, per annum, and to the Commissioners of the Land Office, with interest and an offer to pay all of the taxes, interest, penalty, and costs against the land;

alleging that the claims of the defendants in error were clouds upon his title, and praying that the title to the land be quieted in him.

Upon a trial the court found that the allegations of the plaintiff's petition were not sustained by the evidence, and rendered judgment against the plaintiff in error, from which judgment he appealed to this court.

Plaintiff in error here contends that he has the equitable title to the land, that the deeds of the defendants in error are void, and that the certificate of sale to the defendant in error Shaw is void. The particular contention is that state school land cannot be the subject of a conveyance by a resale tax deed prior to the time that payment in full is made therefor, and that a certificate of sale cannot be issued by the Commissioners of the Land Office on the basis of a resale tax deed.

Defendants in error contend that the resale tax deeds are valid; that the right of action of the plaintiff in error to void the resale tax deeds is barred by the statutes of limitation, and that the judgment of the court is sustained by the evidence and the law.

There appears to be no particular contention as to the evidence, and the contention is limited to the effect of the evidence.

Under the provisions of section 6, art. 10, of the Constitution of Oklahoma, "All property * * * of this state * * * shall be exempt from taxation; * * *" and under the provisions of section 9575, C. O. S. 1921, "The following property shall be exempt from taxation: * * * All property * * * of this state. * * *"

State school land belongs to the state, and under the provisions of these sections is exempt from taxation. Under the provisions of chapter 81, art. 1, O. O. S. 1921, such land may be sold by the Commissioners of the Land Office under certain restrictions therein set forth. Such sale may be for cash or on deferred payments.

In the first instance a patent to the land is issued and the purchaser becomes the owner of the land. The state has no interest therein, and the land is subject to taxation as any other land.

In the second instance a note is given evidencing the unpaid portion of the purchase price and a certificate of sale of the land is issued to the purchaser. The state retains an interest in this land and is the owner of the legal title thereto. The purchaser acquires only an equitable interest

therein, and his right to the legal title is dependent on two things: First, that he complete the payment therefor; and, second, that he pay the taxes assessed against the land after his contract of purchase thereof.

The Legislature provided section 9321, C. O. S. 1921) that the Commissioners of the Land Office, as soon as possible after a sale of such land, should transmit to the clerk of the county in which the land is situated a detailed description of the land so sold with the name of the purchaser and required the county clerk to extend the same upon the tax rolls for the purpose of taxation. It will be noted that the section was adopted at a time when the county clerk was authorized to prepare the tax rolls. The section provided:

"* * * And the same shall thereupon become subject to taxation the same as other lands, and the taxes assessed thereon collected and enforced in like manner as against other lands: Provided, however, that the purchaser at a tax sale of any such land sold for delinquent taxes, shall acquire by virtue of such purchase only such rights and interest as belong to the holder and owner of the certificate of sale issued by the Commissioners of the Land Office under the provisions of this article and the right to be substituted in the place of the holder and owner of such certificate of sale as the assignee thereof. * * *"

That provision must be construed in connection with section 9575, supra, and section 6, art. 10, supra. It is clear that neither the people nor the Legislature intended that the state school land might be taken and conveyed by a tax deed so long as the state retained any interest therein, and in order that that intention might be clear the Legislature, as a part of said section 9321, supra, said:

"But no tax deed shall be issued upon any tax certificate procured under the provisions of this article while legal title of said lands remains in the state of Oklahoma."

So long as the title to the land is in the state of Oklahoma and it is necessary that a patent be issued from the state of Oklahoma to convey the title to a purchaser, the legal title is in the state of Oklahoma, and under that provision no tax deed shall be issued against the land.

The Legislature foresaw that a purchaser might fail to complete his payment to the Commissioners of the Land Office and authorized a cancellation of the certificate of sale (section 9322, C. O. S. 1921). It was provided that when a certificate of sale was so canceled the county clerk should be notified and the lands should not thereafter be listed for taxation. It was further provided that in the event of redemption of the land,

" * * * the party making such redemption shall pay as taxes, and in addition to all other charges, an amount equal to the taxes last levied thereon for each year such land was not listed for taxation, together with such interest and penalty as would have been charged, if the same had been regularly listed and taxed."

The Legislature foresaw that the purchaser might not pay the taxes on the land and provided (section 9321, supra) that:

" * * * Upon a production to the proper officer of a tax certificate given upon such tax sale, * * * such tax purchaser shall have the right to make any payment of principal or interest then in default upon such certificate of sale as the assignee thereof."

From this procedure it is clear that a purchaser of state school land, on deferred payments, is required to pay the taxes levied upon the land from the time of his purchase, and that if he does not pay the same, the land may be sold for taxes and the holder of the tax sale certificate may acquire from the Commissioners of the Land Office the rights of the original purchaser of the land, and that the tax sale certificate shall operate as an assignment from the holder of the certificate of sale to the holder of the tax sale certificate of the rights under the certificate of sale.

In the case at bar no one offered to purchase the land for the taxes levied against it and the county treasurer bid off the same for the use and benefit of the county. Thereafter the county treasurer offered the land for sale at a resale, and when no one offered to purchase it, he sold the same under the resale statute (section 9745, C. O. S. 1921) to the county and issued a deed therefor in the name of the chairman of the board of county commissioners.

As we have heretofore stated, the statute prohibits the issuance of a tax deed against such land. The statutes show a valid reason therefor. A resale tax deed

" * * * shall expressly cancel and set aside all taxes, penalties, and interest and costs previously assessed or existing against said real estate, * * * and such deed shall vest in the purchaser and grantee of said real estate an absolute and perfect title in fee simple to said land. * * * " (Section 9746, C. O. S. 1921.)

If a resale tax deed is issued, it must convey "an absolute and perfect title in fee

simple," which would deprive the state of its land. There is no other provision for the issuance of a resale tax deed.

It is said that if a tax deed cannot be issued, then no one would purchase such land at a tax sale. The holder of a tax sale certificate is entitled to the return of his investment with 18 per cent. per annum interest, which would seem to be sufficiently attractive to insure a sale. If the investment, with the interest thereon, is not paid to the holder, he is entitled to be substituted for the holder of the certificate of sale, which gives him the benefit of the payments that have been made to the Commissioners of the Land Office by the holder of the certificate of sale. But if compliance with the requirements of the statutes prevents a sale of the land, the taxing units are in no worse condition than they would be if the Commissioners of the Land Office had never issued a certificate of sale and no worse than they would be should the Commissioners of the Land Office thereafter cancel the certificate of sale. If no certificate of sale had been issued, the land would not have been taxable, and if the certificate of sale was canceled, the equitable title would revest in this state free and clear of any tax lien. After a cancellation of a certificate of sale and the revesting of the equitable title in the Commissioners of the Land Office, a sale thereof by the Commissioners of the Land Office would be free and clear of any former tax sale and the holder of a tax sale certificate would lose his investment. His sole remedy is to procure an assignment of the original certificate of sale.

We think that we have called attention sufficiently to the statutes and the reason for the enactment thereof.

The first question that presents itself is: Did the county take anything by its resale tax deed? The answer is, no. The statute that makes the land taxable provides that no tax deed shall be issued. Since the county took nothing by its resale tax deed, it has nothing to convey to the defendant in error Shaw, and the deeds from the county to Shaw are ineffective.

The statute of limitations pleaded by the defendants in error has no application. The execution and delivery of the deeds did not pass the title to land. Before the title to land passes by a tax deed there must be some law authorizing the execution and delivery of a tax deed. Since there is no law authorizing the issuance of a tax deed to state school land where the purchase price has not been paid, there is in law no tax deed.

The statute of limitations pleaded applies to a tax deed authorized by statute and does not apply to an instrument denominated "tax deed" and which is executed in the face of a statute prohibiting the execution thereof.

Those deeds and the subsequent deeds from the defendants in error were placed of record and constitute clouds on the title to the land and they should be removed. When the Commissioners of the Land Office sell a tract of school land on deferred payments, they do so under a law that prohibits the issuance of a tax deed against the land, and where an individual has caused to be placed of record a tax deed which, on its face, attempts to convey that land, the title to the land is clouded in violation of law.

The equitable title to this land was in Jones and his wife. The equitable title, under the provisions of the statutes, passes to the holder of a tax sale certificate after payment of the amount required therefor. There was no such payment and no tax sale certificate was issued. The district court of Cimarron county, sitting as a court of equity, foreclosed a mortgage on the Jones' interest and approved a conveyance thereof to plaintiff in error.. Plaintiff in error became the owner of the equitable interest thereby. This action, then, is between the plaintiff in error, who by assignment has the equitable interest in the land, against the defendants in error, who have no interest in the land and whose evidences of title are prohibited by law.

It is said that, since the defendant in error Clark has paid for these deeds, he is entitled to be considered as the assignee of the holder of the certificate of sale as much as though he were the holder of a tax sale certificate. We would be inclined, in equity, to so hold if he had paid the amount of taxes against the land that a tax sale certificate holder would have been required to pay, but we cannot so hold in this case, for here, there has been no payment of the amount of taxes, interest, penalty, and costs against the land, but only an arbitrary sum much less in amount than that required to be paid.. There is such a marked distinction between a tax sale certificate and the rights thereunder and a resale tax deed and the rights thereunder as to prevent this court holding that the rights of a party are the same under either.

A resale tax deed conveys "an absolute and perfect title in fee simple". If the contention of defendants in error is followed, we should have a condition where the holder

of a perfect title in fee simple goes to the Commissioners of the Land Office and exchanges it for a contract for a deed.

The purchaser of a resale tax deed pays the amount of his bid, be it large or small, and his deed cancels all of the taxes against the land up to that time.

The purchaser of a tax sale certificate must pay all of the taxes, interest, penalty, and costs against the land and taxes subject "to all claims which the state may have thereon for taxes or other liens or incumbrances."

We cannot hold that one who has not paid what the law requires him to pay may obtain benefits that can be obtained only by making the payment required by the law.

We therefore hold that the tax resale procedure of the state has no application to school land sold on deferred payments and evidenced by certificates of sale from the Commissioners of the Land Office; that such land is governed by the tax sale procedure authorizing the issuance of a tax sale certificate, with the provision that no tax deed shall issue thereon, and that the rights of the holder of such a tax sale certificate are enforceable only by presentation thereof to the Commissioners of the Land Office as an assignment of the rights of the holder of a certificate of sale for the purpose of securing the cancellation of the certificate of sale and the issuance of a certificate of sale in lieu thereof.

The plaintiff in error has tendered to the county treasurer and has tendered into court the full amount of the taxes, interest, penalty, and costs against this land. The county treasurer has refused to accept the tender. Under the holding of this court no interest, penalty, and costs can accrue after the making of a valid tender which is refused. Loth-Huffman Clothing Co. v. Schwartz, 74 Okla. 18, 176 Pac. 916.

The defendants in error refused to accept the tender by the plaintiff in error of the amount paid for the tax deed and the amount paid to the Commissioners of the Land Office, with penalty and interest thereon. The plaintiff in error is bound by that tender. Lasoya Oil Co. v. Zulkey, 40 Okla. 690, 140 Pac. 160. However, no penalty or interest is chargeable after the date of that tender. Loth-Hoffman Clothing Co. v. Schwartz, supra.

Section 9751, C. O. S. 1921, provides that a person desiring to set aside a tax deed must make a certain tender to the holder of the tax deed. It is contended that that section does not apply to a resale tax deed. We will not attempt to settle that question, for the reason that there is no resale tax deed involved in this case.

A considerable portion of the briefs is devoted to a discussion of the form of the resale tax deeds. We will not engage in a discussion of the merits of that contention.

It is contended that under section 9750, C. O. S. 1921, certain things must be clearly pleaded and proved to defeat a resale tax deed. That section has no application where the law prohibits the issuance of a resale tax deed.

The briefs contain a discussion of the right of a county attorney to purchase property from the board of county commissioners of the county of which he is a public officer. By reason of the view we take of this cause, we do not consider it necessary to discuss that contention.

The record shows that defendant in error Shaw has given a note to the Commissioners of the Land Office for deferred payments under the certificate of sale issued to him. Since the Commissioners of the Land Office are not parties to this litigation, we will not attempt to determine the validity of that note.

There may have been changes in the status of the parties hereto since the judgment in the trial court, and this opinion is limited to the rights of the parties as they existed on the date of the judgment by the trial court.

This cause is reversed, with directions to the trial court to authorize the plaintiff in error to pay to the county treasurer of Cimarron county all of the taxes, interest, penalty, and costs accruing against the land involved herein up to the date shown by the record herein of the tender by the plaintiff in error to said county treasurer of the taxes, interest, penalty, and costs due to said county treasurer on said land, and to pay to the court clerk of Cimarron county the amount paid to Cimarron county and the amount paid to the Commissioners of the Land Office by the defendants in error, or any of them, for the deeds from that county and as payment on the land involved in this action with penalty and interest thereon up to the date of the tender thereof as shown by this record for the use and benefit of the defendants in error making such payments. Upon the payment by the plaintiff in error of such sums, or the tender thereof, the trial court is directed to enter its decree canceling the resale tax deeds from the county treasurer to the chairman of the

board of county commissioners, the deeds from the board of county commissioners to the defendant in error Shaw, and the deeds from the defendant in error Shaw to his grantees; canceling the certificate of purchase from the Commissioners of the Land Office to the defendant in error Shaw, and quieting the title of the plaintiff in error in said land as of the date of the judgment of the trial court in this cause, subject to all of the rights of the Commissioners of the Land Office of the state of Oklahoma.

If, since the date of the judgment of the trial court, there has been any change in conditions that requires further action in order that this decision shall be equitable, the trial court is authorized to take such further action as is necessary not inconsistent herewith.

It is further ordered that the plaintiff in error recover his costs, including the costs of this appeal.

MASON, C. J., and HUNT, CLARK, HEFNER, CULLISON, and SWINDALL, JJ., concur. LESTER, V. C. J., and RILEY, J., absent.

Note.—See "Taxation," 37 Cyc. p. 873, n. 3; p. 1358, n. 2; p. 1423, n. 96; p. 1474, n. 58; p. 1498, n. 31; p. 1507, n. 93.