The STATE of Oklahoma on Relation of the COMMISSIONERS of the LAND OFFICE of said State and the Board of County Commissioners of the County of McClain, State of Oklahoma, Plaintiffs In Error,

v.

CONTINENTAL OIL COMPANY, a corporation, Defendant In Error.

No. 35749.

Supreme Court of Oklahoma.

April 27, 1954.

Petitions for Rehearing Denied Sept. 14, 1954.

L. D. Harris, County Atty., John W. Nance, Asst. County Atty., Purcell, for County Comr's of McClain County, plaintiffs in error.

R. H. Dunn, Rupert E. Wilson, Jr., Shell Bassett, Oklahoma City, for Commissioners of the Land Office, plaintiffs in error.

Joe W. Curtis, Pauls Valley, R. O. Wilson, Ponca City, for defendant in error.

DAVISON, Justice.

This is a suit to quiet title to an undivided one-half interest in the oil, gas and other minerals underlying a 100-acre tract of land in McClain County, Oklahoma, brought by Continental Oil Company, as plaintiff, against the defendants, The State of Oklahoma on relation of The Commissioners of

the Land Office of said State, and the Board of County Commissioners of McClain County, State of Oklahoma. The parties will be referred to as they appeared in the trial court.

The plaintiff claims title by reason of a mineral deed from the former owner of the fee. The defendant, Land Office, stands in the position of an execution purchaser in foreclosure of its subsequently executed mortgage. The defendant Board of County Commissioners was the delinquent tax resale purchaser whose deed was cancelled after purchase of the property at execution sale by the "Land Office". Most of the facts appear in the record by stipulation of the parties.

On March 2, 1929, the then owner of the fee conveyed an undivided one-half interest in the minerals to plaintiff's grantor. About a month later, the said fee owners mortgaged the property to the Commissioners of the Land Office. Some seven years later the mortgage was foreclosed as to the entire fee in a suit wherein the plaintiff here was not made a party. Judgment therein was rendered on February 23, 1937. Subsequently, at execution sale, the "Land Office" purchased the property and was issued a sheriff's deed on September 7, 1938, wherein the entire fee was described.

Intermediate the foreclosure judgment and the execution sale, the lands were sold at tax resale for delinquent and unpaid taxes for the years subsequent to the execution of the mortgage (1930-1937). After the purchase of the property by the "Land Office", its secretary properly certified said fact to the County Treasurer of McClain County, who, in turn made notation of cancellation of all unpaid taxes, tax certificates and tax deeds, all in conformity with the provisions of 64 O.S.1951 § 151. There has been no production of oil, gas or other minerals from the premises.

Thereafter the property was, by the "Land Office", advertised for sale, the notice providing that the purchaser would receive no interest in the minerals. An original certificate of sale and several certificates of sale on assignment were thereafter issued, each and all of which provided for the reservation to the defendant herein of a one-half interest in the oil, gas and other minerals in and under said lands. In a suit to quiet title, filed by the "Land Office" against the Board of County Commissioners of said County and other defendants, wherein Continental Oil Co. was not made a party, judgment was rendered on December 8, 1943, in favor of the "Land Office."

The case at bar was filed on December 19, 1947, and judgment was rendered for plaintiff on June 10, 1952. From that judgment, the defendants have perfected this appeal. The foundation of appellants' position is the following statement, made as dicta in the case of State ex rel. Com'rs of Land Office v. Southland Royalty Co., 204 Okl. 284, 230 P.2d 471, 473, to wit:

"Inasmuch as the Commissioners of the Land Office never acquired the title to the one-half of the royalty formerly owned by Southland, their Secretary had no authority to certify to the County Treasurer of Texas County that the Commissioners were the owners thereof, and said County Treasurer had no authority or right to strike said property from the taxable-property list and strike all delinquent taxes assessed and charged against said land, and all tax certificates and tax deeds based upon such delinquent taxes, insofar as this one-half of the royalty is concerned; so Sec. 151, Title 64, O.S.1941, has no application."

It is important in a consideration of this case to take note of the position occupied by each of the several parties as the events occurred. At the time plaintiff purchased the mineral estate, it became the owner of an interest in the real property which was not taxable and could not be assessed for that purpose. From a tax standpoint, the surface and the minerals constituted one unit. The assessment of the surface carried with it the minerals thereunder. But there was no duty on the part of plaintiff, the mineral owner, to pay the taxes. That duty rested upon the surface owner and his grantee, whether the grantee be as an owner or as a mortgagee. Further, the duty to pay the taxes was so inescapably

that of the surface owner or mortgagee that if they failed to pay the taxes and allowed the property to be sold at tax sale, such surface owner could never thereafter purchase the tax title to the exclusion of the former mineral owner. Colby v. Stevenson, Okl., 265 P.2d 477, and numerous cases therein cited. There was another right the mineral owner had as to unpaid taxes. He could pay the same and have a lien on the surface for protection. Deruy v. Noah, 199 Okl. 230, 185 P.2d 189. That lien was superior to all estates in the surface.

Then with that situation obtaining, the surface owner and the "Land Office", without any consent of the mineral owner, entered into a mortgage contract whereby the entire picture was changed as to the rights of the mineral owner. Thereafter, because the State was mortgagee, he could not go in and pay delinquent taxes and have a prior lien on the surface for securing repayment. If he was to protect himself from taxes, he would have to anticipate the payment of the State's subsequent mortgage also. Bear in mind that the taxes he would be paying were not those which he owed but, rather, those that the surface owner and his mortgagee were normally under obligation to him to pay. Now going a step further, the "Land Office" foreclosed its mortgage and became the owner of the surface at execution sale. From the date of the mortgage, except for one year, the surface owner had failed to pay the taxes and the "Land Office", as mortgagee, had neglected to require payment of them. Those were the taxes the surface owner and his grantee were under obligation to the mineral owner to pay. But the "Land Office" foreclosed its mortgage, and by waiting nearly two years after foreclosure judgment before requiring execution sale, it permitted a tax resale of the property, knowing full well that no tax sale could affect its rights.

Did the cancellation of the tax deed under the provisions of 64 O.S.1951 § 151, operate as a cancellation as regards that part of the property which was taxable (the surface) and not operate as a cancellation as to that part of the property which was not taxable (the mineral estate)? Said section of our statutes provides:

"Upon the acquirement of the legal title of any lands by the Commissioners of the Land Office, either by cancellation of the Certificate of Purchase, foreclosure of mortgage, warranty deeds, or otherwise, the Secretary to the Commissioners of the Land Office shall certify such facts to the County Treasurer of the county in which such lands are situated, and upon such certification it shall be the mandatory duty of the County Treasurer of such county to remove said lands from the taxable property list, and to strike from the record or make proper notation upon the books and records of such County Treasurer that all delinquent taxes assessed and charged against said lands, and all tax certificates and tax deeds based upon such delinquent taxes, are canceled and nullified. Any County Treasurer of this State who fails and refuses to comply with the requirements and provisions of such certification by the Secretary, and of this Section, shall render himself subject to ouster from office and shall be liable upon his official bond for any damage that may be caused by the State by his neglect and omission. The recordation in the office of the proper County Clerk of any Sheriff's Deed to the State of Oklahoma as grantee or of any Warranty Deed given to the State of Oklahoma in settlement of mortgage indebtedness, or the cancellation of any Certificate of Purchase, when certified by the Secretary to the Commissioners of the Land Office to the proper County Treasurer, shall ipso facto cancel all delinquent taxes on the real estate involved, and shall likewise cancel all outstanding tax certificates or tax deeds based upon taxes levied subsequent to the recordation of the mortgage to the Commissioners of the Land Office, or subsequent to the issuance of the canceled Certificate of Purchase by the Commissioners of the Land Office."

By the terms of that law, when the Land Office acquires title to realty, said property

becomes retroactively tax exempt and "all delinquent taxes assessed and charged against said lands, and all tax certificates and tax deeds based upon such delinquent taxes are canceled and nullified." The meaning of the act could not be more clearly expressed. Upon the happening of the acquisition of title by the "Land Office", the real estate immediately becomes tax exempt for current and past years. A County Treasurer is subject to removal if he does not make his records so show.

It then becomes important, in cases similar to the one at bar, to consider the effect, of the cancellation of taxes, upon the outstanding nonproducing mineral estate. That depends upon the taxable status of the minerals independent of the taxation of the surface. As was pointed out in the case of Jenkins v. Frederick, 208 Okl. 583, 257 P.2d 1058, 1059:

"A conveyance of oil, gas and other minerals in and under land is a conveyance of an interest in the land itself but oil and gas while lying in the strata of the earth, with no production therefrom, must be taxed as realty to the owner of the land if such land is taxable.

"In Oklahoma the statutory method of assessment of land for ad valorem taxes is in rem and adverse interests which may be held in realty are not separable for taxation purposes."

Thus, for taxation purposes, the assessment and taxation of the surface included, as an integral part thereof, the assessment and taxation of the minerals. The two were not separable. There is no provision for assessment and taxation of the minerals as such. But, even if the minerals could have been assessed and taxed independently of the surface, we would here be considering a single assessment of a taxable item (the minerals) and a nontaxable item (the surface owned by the Land Office). It would present much the same situation as was in the case of Squires v. Swanson, 169 Okl. 390, 37 P.2d 276. There, an entire tract of land was assessed as a unit. It consisted of a taxable undivided one-half interest and a nontaxable undivided one-half interest owned by a restricted Indian. The entire tract was sold at tax sale. This court held that the tax deed was void as to both interests in the entire tract because the amount of tax levied against the taxable interest was inseparable from the amount levied against the non-taxable interest, there being a single assessment.

In the case of Evans v. Neal, 198 Okl. 515, 180 P.2d 661, we went further than in the Squires case, supra. In the Evans case, two taxable tracts of land belonging to separate owners were assessed as a unit in a single assessment. We there held that the amount of tax due on each tract could not be segregated from the amount due on the others and therefore a tax deed based upon the nonpayment of the tax, in turn, based upon the single assessment was void as to both parcels. It is therefore established law in this jurisdiction that a tax deed, issued because of the nonpayment of taxes levied upon two items of property included in a single assessment, being void as to one item is also void as to the other. And that, whether both items are individually taxable or whether one of the items is taxable and the other not. Such deed cannot be cancelled piecemeal. It is void in toto because of the single inseparable assessment.

Now, back to the case at bar. Here there was a single assessment for each year but, in the legal aspect, and, as expressed in the Jenkins v. Frederick case, supra, there were not two items of property. The mineral estate was not a separate item from a tax viewpoint. It was only an element of the surface and inseparable therefrom. Therefore, the facts here are much stronger than in either the Squires case or the Evans case, above discussed. Then the "Land Office" foreclosed its mortgage and obtained title, the surface (which, from a tax standpoint, included the minerals) became nontaxable, and the tax sales and tax deeds thereon were null and void. There can be no logical conclusion other than that, being void as to the surface, they were void as to all that the surface consisted of from a tax

angle. That included the mineral estate of plaintiff.

As to every item included in the single tax assessments upon which the tax deed was founded, the same rule should apply in the case at bar as was applied in the case of Clark v. Board of County Commissioners of Cimarron County, 143 Okl. 18, 285 P. 127, wherein it was held:

"Where state school land, sold by the commissioners of the land office on deferred payments evidenced by note and certificate of sale, is sold at resale by the county treasurer to the county and a resale tax deed therefor is executed and delivered to the chairman of the board of county commissioners, who thereafter deeds the same to a purchaser, the resale tax deed is unauthorized and void and the purchaser takes nothing thereby."

The trial court was correct in quieting plaintiff's title. The foreclosure action and the subsequent suit to quiet title had no effect on plaintiff because it was not a party to either.

Insofar as the opinion in the case of State ex rel. Com'rs of Land Office v. Southland Royalty Co., supra, is in conflict with the views herein expressed, the same is overruled.

Judgment affirmed.

JOHNSON, V. C. J., and WELCH, ARNOLD, O'NEAL, WILLIAMS and BLACKBIRD, JJ., concur.

HALLEY, C. J., and CORN, J., dissent.

HALLEY, Chief Justice (dissenting).

I cannot agree with the majority opinion. There was no contention that the tax proceedings by which McClain County became vested with the title to the land in question were not regular. The title to the land was all in McClain County and Continental had no claim to the property. If the mortgagee in this case had been other than the Commissioners of the Land Office no one could say that the Continental had any interest. The Commissioners of the Land Office fore-closed their mortgage which only conveyed to them the surface and half of the minerals since the plaintiffs had purchased prior to the mortgage an undivided one-half interest in and to all of the oil, gas, and other minerals in and under and that may be produced from the land in question. When the Commissioners of the Land Office directed the Treasurer of McClain County to cancel the tax deed held by the County, the Treasurer could only cancel the interest that the Commissioners owned and that was the surface and half the minerals. This is required by 64 O.S.1951 § 151. It begins: "Upon the acquirement of the legal title of any lands by the Commissioners of the Land Office, either by * * * foreclosure of mortgage * * * the Secretary to the Commissioners of the Land Office shall certify * * *."

This section refers to "such lands", "said lands", and "real estate involved" clearly shows that the Legislature only had in mind the land which the Commissioners of the Land Office actually got and not what they claimed or attempted to get.

The Continental's claim to this one-half mineral interest had been wiped out by the tax deed and the Commissioners of the Land Office had no power, constitutional or otherwise, to reinvest in it the title to one-half of the mineral interest by requesting the County Treasurer to cancel a tax deed to an interest to which they had no claim.

The controversy between McClain County and the Commissioners of the Land Office is one in which Continental has no concern.

The language in the majority opinion to the effect that the surface owner was under obligation to the mineral owner to pay the general taxes is without foundation. The obligation to pay taxes is to the taxing authority. The mineral deed is not a mortgage. The general taxes were a lien against the entire interest in this land, both surface and mineral.

The Continental should be denied any relief because it sat by and saw the land sold for taxes. It was incumbent upon the Continental to pay the general taxes if not paid by someone else, if it expected to preserve its interest in the minerals and upon its

failure to see that the taxes were paid, should not now be allowed to assert a claim to this interest.

There is no reason why McClain County could not own one-half of the minerals in this land.