QUESTION: Where a tax deed is issued on the surface rights in the property, what property rights accompany the tax deed when the subsurface rights in a parcel of real property have been sold or otherwise transferred and the subsurface owner has paid his taxes on the subsurface rights but the surface owner has not?
SUMMARY: In a situation where the surface and subsurface rights in real property have been separated and the surface interest owner has failed to pay taxes on his interest so that a tax deed will issue, the new owner under the tax deed acquires only the rights of the prior surface owner, free and clear of all liens and encumbrances, except those which specifically survive under Ch.197, F.S., but such new owner does not acquire any rights owned or otherwise possessed by the owner of the subsurface rights or interest, and the subsurface interest is not affected by the issuance of a tax deed on the fee in the surface. The owner of the said tax deed acquires those rights which were previously vested in the owner of the surface interest. He does not acquire any rights of the subsurface owner. Prior to the enactment of s.193.481, F.S., and its predecessor, s. 193.221, F.S., there was no statute in Florida providing for the assessment and taxation of the subsurface rights and interests in real property separate and apart from the rights in the surface. Under the law as it existed then, a sale of a tax deed extinguished all such subsurface interests or rights which had been sold or otherwise transferred. Such a situation was before the courts in the case of Lee v. Carpenter, 132 So.2d 432 (2 D.C.A. Fla.). In that case a tax deed had been issued on a parcel of property. All phosphate and mineral rights had been conveyed earlier and the owners of such subsurface rights were defendants in a suit brought by the tax deed owner. The defendants contended that their subsurface rights and interests had not been extinguished by virtue of the sale of the tax deed. The court rejected their contentions. In doing so it quoted from the stipulation pointing out that there had been no separate assessment of the subsurface interests. The court stated at p. 434: When the 1932 taxes were assessed the laws of the State of Florida provided for only assessing separate interests in real property on "timber and the turpentine rights." Sec. 922, C.G.L. 1927, § 193.22, Fla. Stat., F.S.A. No other separate interest in real property was mentioned. The first legislation in this State on mineral rights was passed by the Legislature in 1945, which is embraced in
Chapter 22784, Laws of Florida, 1945, and provides, in part, as follows: "* * * All title forfeitures, foreclosures, reverters, and sales of lands for non-payment of ad valorem taxes shall include the subsurface oil and gas and mineral interests." The above chapter was replaced by Chapter 23883, Laws of Florida, 1947, but the portion quoted above was retained. See § 211.14 Fla.Stat., F.S.A. (Emphasis supplied.) At p. 435 the court stated: The purchaser takes all of the estates in a tax deed unless there is constitutional or statutory authority for an exception. See Osterberg v. The Union Trust Co. of N.Y., 1877, 93 U.S. 424,23 L.Ed. 964, where the court said: (Emphasis supplied.) At p. 436 it stated: The majority rule, where the law does not provide for separate taxation of mineral rights or estates, is fully exemplified by decisions from Oklahoma, Iowa and West Virginia. The court quoted from the Oklahoma case of State ex rel. Com'rs of Land Office v. Continental Oil Company, Okla., 273 P.2d 1002, in part as follows: At the time plaintiff purchased the mineral estate, it became the owner of an interest in the real property which was not taxable and could not be assessed for that purpose. From a tax standpoint, the surface and the minerals constituted one unit. The assessment of the surface carried with it the minerals thereunder. But there was no duty on the part of plaintiff, the mineral owner, to pay the taxes. That duty rested upon the surface owner and his grantee, whether the grantee be as an owner or as a mortgagee. * * * * * "Thus, for taxation purposes, the assessment and taxation of the surface included, as an integral part thereof, the assessment and taxation of the minerals. The two were not separable. There is no provision for assessment and taxation of the minerals as such. * * *" (Emphasis supplied.) By enacting s. 193.481, F.S. (former s. 193.221, F.S.), Florida has now changed the law from as it existed at the time of the Lee v. Carpenter case, supra. The constitutionality of said law was upheld in the case of Dickinson v. Davis,224 So.2d 262. In that case, Arvida Corporation returned the mineral interests of the appellees (Thornton Davis, et al.) for taxation pursuant to Ch. 63-355, Laws of Florida (then s. 193.221, F.S., now s. 193.481, F.S.). Under the statute as it existed then, the owner of the fee was authorized to return the mineral interests, as was the owner or claimant of the mineral interests or subsurface rights, or any person, firm, or corporation claiming by, or through, such subsurface owner or claimant. Arvida Corporation was the owner of the fee and the appellees were owners of the mineral interests in the fee. Beginning at p. 264, the court stated: It is common practice for each multiple owner in the same real property to be taxed separately as to his individual interest in same. Prior to the enactment of this law providing for separate assessment of mineral, oil, gas and other subsurface rights, the fee title holder was placed in the position of paying taxes on the entire interest of the real property, including the sub-surface rights in same, which might be owned by other persons. The purpose of this law was to place upon those persons who own only the subsurface rights in real property the obligation to pay a portion of the real property taxes proportionate to their interest in the whole. (Emphasis supplied.) At p. 265, the court stated: Land may be divided horizontally as well as vertically, so that one person may own the surface and another the minerals underground. Where the fee in the mineral is severed from the fee in the surface, it is subject to separate taxation. 51 Am.Jur. Taxation, ss. 437, 452; Annot., 1916D L.R.A. 307. In fact, separate estates or interests in subsurface rights are taxable as real property or real estate under the tax statutes of many of the states. 4 Summers Oil and Gas (Perm. Ed.) s. 784. (Emphasis supplied.) As can be noted, where the fee in the mineral is severed from the fee in the surface, the two are to be taxed separately, with the aggregate amount of taxes due being equal to the total taxes due on the entire parcel were it combined. The same would be true if the separation occurred through any other vehicle, such as a mineral lease or any way whereby a transfer of subsurface rights or interests had occurred. (Also see AGO 069-110.) Thus, after a separation, two separate and distinct taxable interests would exist just the same as if a parcel of property were divided vertically. It should be noted that the legislative mandate in s. 193.481, F.S., to separately assess when a separation has occurred, is mandatory. It mandates that ". . . such subsurface rights shall be taken and treated as an interest in real property separate and apart from the fee or ownership of the fee or other interest in the fee, . . ." and that such ". . . mineral, oil, gas, and other subsurface rights . . . shall be subject to separate taxation." (Emphasis supplied.) This language is mandatory not directory. (See 30 Fla. Jur. Statutes s. 11.) It commands the property appraiser to assess such interests separately. At p. 265 of the Davis case the court stated further: All statutes and regulations, not in conflict with Fla. Stats., s. 193.221, F.S.A., relating to the assessment and collection of ad valorem taxes on real property are, by the specific terms of this statute, applied to the separate assessment and taxation of subsurface rights, insofar as they may be applicable. Fla. Stats., s. 193.221(3), F.S.A. This language is now embodied in s.193.481(4) and (5), F.S., providing: Tax certificates and tax liens encumbering subsurface rights, as aforesaid, may be acquired, purchased, transferred, and enforced as are tax certificates and tax liens encumbering real property generally, including the issuance of a tax deed. This section is squarely consistent with the remainder of the statute, since it expressly allows for the sale of tax certificates and tax liens and the issuance of tax deeds on the subsurface interests just like such would occur on the surface fee in real property. Thus a tax deed could issue on the subsurface rights or interests and a tax deed could issue on the fee in the surface. Each would represent only the rights embodied in the specific interest involved. This separation was recognized in AGO 069-110 wherein my predecessor held:
Under s. 193.221(1) [s. 193.481(1)], F.S., mineral, oil, gas and other subsurface rights are to be treated as an interest in real property and subject to separate taxation. Since state property is immune from taxation, s. 192.06(1) [s. 196.191(1)], F.S., and Park-N-Shop, Inc. v. Sparkman, 99 So.2d 571 (Fla. 1957), the separate valuation of such subsurface rights owned by the state may result in a reduced assessment of the fee. No taxes will be paid on the value of the state's interest. The surface rights and any remaining subsurface rights should then be assessed at just value, but in no event should this assessed value plus that of the state's subsurface rights exceed the just value of the property as a whole. (Emphasis supplied.) Tax deeds are discussed in Ch. 197, F.S. Section 197.271 provides: All tax deeds shall be issued in the name of a county and shall be signed by the clerk of the county. The deed shall be witnessed by two witnesses, the official seal shall be attached thereto, and the deed shall be acknowledged or proven as other deeds. Except as specifically provided in this chapter, no right, interest, restriction or other covenant shall survive the issuance of a tax deed. The charges by the clerk shall be as provided in s. 28.24. Tax deeds issued to a purchaser of land for delinquent taxes shall be in the form prescribed by the department of revenue. All deeds issued pursuant to this section shall be prima facie evidence of the regularity of all proceedings from the valuation of the lands to the issuance of the deed, inclusive. (Emphasis supplied.) A tax deed issued on the surface in the fee would be a deed free and clear of all rights, interests, restrictions, or other covenants and none of same would survive except those specifically provided for in Ch. 197, F.S., but it would not extinguish the rights of the subsurface owner or affect the title to the fee in such subsurface owner, after a separation had occurred by conveyance or otherwise. If a parcel of property had been separated vertically, a tax deed issued on one of the parcels after separation would not destroy the separation and would not affect the remaining parcel. The same is true of a parcel of property which has been separated horizontally. Thus the "parcel" of property which would be sold and for which a tax deed would issue would be the fee in the surface. The tax deed, embracing the fee in the surface, would carry with it all the rights of the prior owner and would wipe out all liens, encumbrances, interests, and other restrictions except those specifically covered in Ch. 197. (See ss. 197.276 and 197.281.) The rights of the owner of the subsurface interest or rights or parcel would not be affected by the issuance of the tax deed. The effect of the separation or severance of the mineral or subsurface rights from the surface is to create a separate and distinct interest in real property which is treated as a separate parcel of real property for all tax purposes. The "parcel of real property" referred to in s. 197.018 could then be either the surface parcel or the subsurface parcel. Section 193.481(4), F.S., expressly recognizes the continued force of such statutes. Similarly the "tax deeds on real estate" mentioned in s. 197.241(1), F.S., in a situation where a separation of the surface and subsurface rights had occurred would have reference to the surface fee as real estate or the subsurface fee rights or interests as real estate as the case may be. Tax certificates could be sold on either. It should be pointed out that the taxable mineral or subsurface interest does not necessarily have to arise through a sale. This was recognized in the case of J. Ed Straughn v. Amoco Production Co., et al., 309 So.2d 39 (2 D.C.A. Fla., 1975), opinion filed February 12, 1975. However, regardless of the manner of severance or separation, the statute establishes separate taxable interests or parcels after such separation for all purposes relating to taxation and specifically allows tax certificates to be sold and tax deeds to issue on such interests. (See ss. 197.111 and193.481(5), F.S.)